IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MINISTRY OF OIL OF THE REPUBLIC OF IRAQ, | § § § § § | |
| Plaintiff, | | |
| vs. | § § | CIVIL CASE NO. 3:14-CV-249 |
| 1,032,212 BARRELS OF CRUDE OIL ABOARD THE UNITED KALAVRVTA and the MINISTRY OF NATURAL RESOURCES OF THE KURDISTAN REGIONAL GOVERNATE OF IRAQ, | § § § § § § § § | **ADMIRALTY** – Fed. R. Civ. P. 9(h) |
| Defendants. | § | |

**PLAINTIFF MINISTRY OF OIL OF THE REPUBLIC OF IRAQ'S VERIFIED AMENDED COMPLAINT AND REQUEST FOR MARITIME ARREST, POSSESSION OR WRIT OF ATTACHMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff the Ministry of Oil of the Republic of Iraq ("MoO") and files suit against the 1,032,212 net barrels of crude oil (the "Cargo") aboard the UNITED KALAVRVTA IMO# 92090397 (the "Vessel"), *in rem,* and against the Ministry of Natural Resources of the Kurdistan Regional Governate of Iraq ("KRG"), *in personam*, and avers as follows:

**I. PRELIMINARY STATEMENT**

1. This is a case of admiralty and maritime jurisdiction and is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and brought pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.      Plaintiff seeks repossession of the Cargo which was wrongfully converted and unlawfully loaded on the UNITED KALAVRVTA when the Vessel was docked in navigable waters outside Ceyhan, Turkey.

## II. PARTIES

3.      ***Plaintiff.***  Plaintiff MoO is an organ of the Government of the Republic of Iraq ("Iraq"), foreign sovereign, and maintains its principal office in Baghdad, Iraq. MoO does not intend to waive sovereign immunity by filing this Complaint.

4.      ***Defendant in rem.***  The Defendant *in rem* is 1,032,212 net barrels of crude oil, which is the property of MoO and in which MoO has a maritime lien as a result of the maritime tort of conversion. At all relevant times the Cargo was aboard the UNITED KALAVRVTA which was and is a Marshall Islands-flagged, ocean-going oil tanker engaged in the carriage of oil products by sea for hire between various foreign and domestic ports. On information and belief, the Cargo now aboard the UNITED KALAVRVTA is now, or during the pendency of this action will be, within this District and within the jurisdiction of this Court.

5.      ***Defendant in personam.***  On information and belief, at all times relevant to this action, the Ministry of Natural Resources of the Kurdistan Regional Governate of Iraq is a subsidiary region of Iraq under Iraqi law and maintains its principal office in Erbil in the Kurdistan Region of Iraq. The Plaintiff is informed and believes and therefore alleges that none of the officers of Defendant Ministry of Natural Resources of the KRG is now within this District and that the Defendant does not maintain an office within this District; but that there are now or will be during the pendency of this action certain goods, within this District, to wit: the Cargo claimed to be owned by Defendant Ministry of Natural Resources of the KRG and in the charge of the Vessel's Master on board.

## III. JURISDICTION AND VENUE

6. This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).

7. The acts and conduct alleged herein occurred on navigable waters and have a disruptive impact on maritime commerce. Further, the loading of MoO's property on board the UNITED KALAVRVTA was a maritime conversion which created a maritime lien on the Cargo in favor of MoO.

8. This Court's jurisdiction complies with the Foreign Sovereign Immunities Act and falls within the Act's exceptions, including the exceptions codified in 28 U.S.C. § 1605 (a)(2), (a)(5), and (b).

9. Venue is proper in this Court because the Cargo is or soon will be in this District.

## IV. FACTUAL BACKGROUND

### A. MOO'S PROPERTY WAS CONVERTED WHEN IT WAS LOADED ONTO THE UNITED KALAVRVTA.

10. The Cargo at issue in this suit is comprised of 1,032,212 net barrels of crude oil aboard the UNITED KALAVRVTA. The net weight of the Cargo is 143,238,909 metric tons, and it is valued at over $100,000,000. Pursuant to Article 111 of the Constitution of the Republic of Iraq, the people of the Republic of Iraq have legal title to the Cargo. (Ex. A, Iraqi Constitution Excerpts.) Accordingly, the Cargo belongs to the people of the Republic of Iraq in all the regions and governates. The United States recognizes the Government of the Republic of Iraq, established by the aforementioned Constitution, as the sole legitimate government of the entire territory of the Republic of Iraq. Pursuant to the laws of the Republic of Iraq, Plaintiff MoO must approve the storage, transport, export or sale of any oil products belonging to the people of the Republic of Iraq, including the crude oil contained in the subject Cargo.

11.     The Cargo in this suit was produced from wells drilled in the Kurdistan region of Iraq.  In December of 2013, without the consent of the MoO, a division, agency or instrumentality of the Kurdistan Regional Government began pumping the illegally produced crude oil through a pipeline originating in Iraq and running to Ceyhan in Turkey, known as the "Iraq-Turkey Pipeline" or "ITP"[1].  MoO instructed the Government of Turkey and its pipeline operator, Botas, to hold the crude oil for the account of MoO.

12.     Despite clear instructions from MoO, Botas did not hold the crude oil for the account of MoO.  Instead, Botas transferred the Cargo to the KRG by loading it on the Vessel designated by the KRG.  An act of conversion occurred on or about June 22, 2014, when the Defendant Ministry of Natural Resources of the KRG purported to take or acquire a proprietary interest in the Cargo from a division, agency or instrumentality of Turkey and loaded it on the UNITED KALAVRVTA in the navigable waters off of Ceyhan, Turkey.  The Ministry of Natural Resources of the KRG which loaded the Cargo is not the owner of the oil nor does it have any title to the oil, which has been illegally misappropriated.

13.     On June 23, 2014, the Vessel left Ceyhan with the Cargo.  On the same day, the KRG caused a bill of lading to be issued in which the oil was 'to be delivered . . . unto order' of the KRG Ministry of Natural Resources.  (Ex. B, Bill of Lading.)

14.     Subsequent acts of conversion may have occurred on navigable waters as the Vessel was in transit.  After several changed destinations, the UNITED KALAVRVTA is

---

[1] The ITP is a pipeline that runs from Kirkuk to Ceyhan, constructed and operated pursuant to the Crude Oil Pipeline Agreement dated August 27, 1973 between the Republic of Turkey and the Republic of Iraq, and its subsequent amendments and protocols (the "ITP Agreement").  The ITP Agreement provides that crude oil may only be transported, stored and loaded through ITP facilities upon the instruction of MoO or MoO's Oil Marketing Company, SOMO.  It provides that the pipeline and storage and loading facilities are for the exclusive use of MoO.

currently in the Gulf of Mexico, offshore Galveston, Texas. Upon information and belief, the Cargo soon will be brought within this District.

### B. MOO'S PROPERTY IS THE SUBJECT OF CURRENTLY PENDING FOREIGN PROCEEDINGS.

15. The determination of the ownership of the Cargo aboard the UNITED KALAVRVTA requires resolution of important issues of interpretation of the Iraqi Constitution and Iraqi Law. These issues should be properly decided by competent courts in Iraq. With this objective, the MoO has initiated legal actions in Iraqi courts seeking to obtain definitive rulings on these points, seeking to resolve the dispute through the legal process established in the Iraqi Constitution, which was approved by the people of the Kurdistan Region. The KRG has deliberately thwarted the efforts of the MoO to have the Iraqi courts resolve these issues by refusing to respond to summonses in these legal actions.

16. The United States and its allies have invested substantial resources in helping the people of Iraq implement a Constitutional, rule-of-law government and develop a law-based system for resolving disputes. While the Federal Government of Iraq has the police power to enforce the laws of Iraq in Kurdistan, the Federal Government's policy is to avoid the use of forcible means and to resolve disputes through proceedings before competent courts. The KRG's refusal to participate in these legal proceedings flies in the face of the Federal Government's policies that favor peaceful and legal means of resolving disputes such as the present case.

17. On July 31, 2012, the MoO initiated a legal action against the KRG in the Federal Supreme Court of Iraq (the "Federal Supreme Court") in respect of the Iraqi constitutional and

legal issues relating to the unauthorized export of crude oil by the KRG.[2] These exports include the Cargo aboard the UNITED KALAVRVTA. The Federal Supreme Court is the highest court in Iraq and is responsible, *inter alia*, for interpreting provisions of the Iraqi Constitution, deciding on the constitutionality of Iraqi laws and settling disputes that arise between the Federal Government and the governments of the governates and regions of Iraq, such as the KRG (Ex. C, Constitution, Article 93).

18.     In the Federal Supreme Court legal action, the MoO alleges, *inter alia*, that the KRG was exporting crude oil in violation of several provisions of the Federal Constitution and Law 101. (Ex. D, Request by the MoO against the KRG in Federal Supreme Court, July 31, 2012 (Arabic original and English translation.)) The Supreme Court was requested, *inter alia*, to order the KRG to implement and apply these provisions of the Constitution and the relevant laws by ceasing its illegal crude oil exports.

19.     Since the commencement of this legal action, the KRG has failed to accept service of process and to respond to summonses to appear and present its case to the Federal Supreme Court. (*See* Ex. E, Letter dated April 10, 2013, from Farouk Mohamed Sami, President of the Federal Supreme Court, to the Council of Ministers of Kurdistan.) There is no procedural mechanism to obtain a default judgment in a case before the Federal Supreme Court, and thus the KRG's failure to comply with the summonses has effectively blocked the Federal Supreme Court from hearing the merits of the case.

20.     In an effort to stem these illegal exports, on June 5, 2014, the MoO applied to the Federal Supreme Court for a preliminary order to stop the KRG from exporting crude oil while

---

[2] It is important to distinguish between the issues of ultimate ownership of the oil and the right to export it, which rest solely with the Federal Government, and the issues of licensing, development, management and production, where there are areas of shared competency between the federal and regional authorities. The latter issues are not implicated in the present dispute.

the dispute was pending. (*See* Ex. F, Request for Injunction by MoO against KRG filed in Federal Supreme Court, June 5, 2014 (Arabic original and English translation.)) The Federal Supreme Court ruled that it could not issue such a preliminary order, because it would have required an examination of the merits of the case and could give the impression of a preliminary decision on the action, which would be premature and, importantly, the Supreme Court called on the court administration to complete the service of process as soon as possible to commence the merit hearings. (*See* Ex. G, Federal Supreme Court Decision, June 24, 2014 (Arabic original and English translation.))

21. Despite the KRG's failure to respond to the summonses of the Federal Supreme Court, the KRG did not hesitate to issue a misleading press release relating to the Federal Supreme Court's decision on the preliminary order. On June 27, 2014 (a Friday, which is a weekend day in Iraq), the KRG published a statement on its website claiming that the Federal Supreme Court had issued a ruling on the merits against a request by the Ministry to prevent KRG oil exports. (*See* Ex. H, KRG press release dated June 27, 2014.) On June 29, 2014, the MoO issued a statement correcting the KRG's misleading press release and explaining that the June 24, 2014 decision related only to a request for a preliminary order and did not address the merits of the case. (*See* Ex. I, MoO Statement dated June 29, 2014.)

22. Criminal proceedings against the KRG Ministry of Natural Resources have also been commenced in Iraq. On May 27, 2014, after the KRG announced in a press release its first sale of Iraqi crude oil produced in Kurdistan (a statement that, like many issued by the KRG, was inaccurate), the MoO filed a criminal complaint before the Judge of the Investigation Court in New Baghdad against the KRG Ministry of Natural Resources and all involved persons, alleging the theft of revenues owed to the people of Iraq from the sale of the crude oil. The MoO based

its claim on the violation of the Constitution and Law 101, among others.  (*See* Ex. J, Request to the Investigating Judge in New Baghdad, May 27, 2014 (Arabic original and English translation.))  These proceedings are ongoing.

23.     The proceedings in this Court are in support of the proceedings in the Courts of Iraq.  Specifically, the purpose of the attachment is to secure satisfaction of the judgment that may ultimately be entered against the KRG.

## V.  CAUSES OF ACTION

### A.     FIRST CAUSE OF ACTION:  RULE C ACTION *IN REM* TO ENFORCE A MARITIME LIEN.

24.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

25.     This is an action to enforce a maritime lien.  Conversion is the unlawful and wrongful exercise of dominion, ownership or control over the property of another, to the exclusion of the same right by the owner.  Admiralty courts have clear jurisdiction over suits *in rem* for the tort of conversion.  A suit *in rem* for a maritime tort gives rise to a maritime lien.

26.     Pursuant to Rule C of the Supplemental Rules of Admiralty or Maritime Claims, and by reason of matters set forth herein, the MoO is entitled to arrest the Cargo for its claims against the Defendant Ministry of Natural Resources of the KRG.  The MoO also asserts claims for pre-judgment interest, costs of *custodia legis*, fees, court costs, and disbursements for all expenses incurred in the arrest and/or sale of the Cargo.

### B.     SECOND CAUSE OF ACTION:  RULE D ACTION FOR POSSESSION AND TO TRY TITLE OF WRONGFULLY CONVERTED CARGO

27.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

28. Plaintiff has legal title or a legal claim to the Cargo aboard the UNITED KALAVRVTA. Plaintiff has been wrongfully deprived of the Cargo.

29. Plaintiff having set forth facts sufficient to warrant possession of the property comprising the *in rem* defendant pursuant to Rule D of the Supplemental Rules of Admiralty or Maritime Claims seeks a grant of possession of same with all ancillary relief prayed for herein.

C. **THIRD CAUSE OF ACTION: RULE B *IN PERSONAM* ACTION FOR ATTACHMENT BASED ON MARITIME TORT OF CONVERSION OF THE CARGO**

30. Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges in the alternative:

31. Defendant Ministry of Natural Resources of the KRG committed the maritime tort of conversion when it purported to take or acquire a proprietary interest in the Cargo, valued at $100,000,000, and loaded it on the UNITED KALAVRVTA in the navigable waters off of Ceyhan, Turkey on June 22, 2014. Subsequent acts of conversion may have occurred on navigable waters as the Vessel was in transit.

32. Plaintiff repeatedly objected to Defendant Ministry of Natural Resources of the KRG's exercise of dominion or control over the Cargo. Accordingly, Defendant knew that its exercise of dominion or control was wrongful, and such wrongful exercise was intentional and interfered with the Plaintiff's rights in the Cargo. Specifically, Plaintiff has been unable to market the Cargo and has suffered loss of the value of the Cargo and lost profits.

33. Plaintiff seeks attachment of the Cargo up to $100,000,000, as security for its maritime conversion claim against Defendant Ministry of Natural Resources of the KRG.

34. Plaintiff avers on information and belief that Defendant Ministry of Natural Resources of the KRG cannot be found within the District, within the meaning of Rule B of the

Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

35. On information and belief, Defendant Ministry of Natural Resources of the KRG purports to be the owner of the Cargo. The Cargo aboard the UNITED KALAVRVTA is subject to this Court's writ of attachment.

## VI.  ORDER AND WARRANT FOR ARREST

36. On July 28, 2014, Plaintiff had information and reason to believe that the Cargo would imminently be lightered into a port within the Southern District of Texas. Accordingly, Plaintiff filed a Verified Complaint requesting maritime arrest, possession or writ of attachment in the Southern District of Texas, Galveston Division. (Plaintiff's Verified Complaint in the Southern District of Texas, Dkt. No. 1.) Magistrate Judge Nancy K. Johnson granted Plaintiff's request, signing an Order and Warrant directing the United States Marshal of the Southern District of Texas to seize the Cargo from any lightering vessel that brings the Cargo from the Vessel to the Southern District of Texas. (Order and Warrant for Seizure of Cargo, Dkt. Nos. 2-3.) A hearing was held on July 29, 2014, and Magistrate Judge Johnson's Order remains in full force and effect.

37. Upon information and belief, there remains a possibility that the Cargo will be lightered into and/or sold in this District, the occurrence of which will be detrimental to Plaintiff's ability to re-possess it for later sale for the benefit of the people of the Republic of Iraq.

## VII.  NOTICE PURSUANT TO FED. R. CIV. P. 44.1

38. Pursuant to Fed. R. Civ. P. 44.1, Plaintiff gives notice that it intends to raise an issue about a foreign country's laws.

## VIII.  PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays:

a) That a judgment be entered awarding Plaintiff as its *in rem* relief the permanent and unrestricted possession of the Cargo as defined and enumerated herein;

b) Until such final judgment of possession is entered, Plaintiff prays that, pursuant to the Supplemental Rules of Admiralty or Maritime Claims and this Court's Order and Warrant for Seizure of Cargo (Dkt. Nos. 2-3), the Cargo or any portion of the Cargo that may come into the District by lighter, be held in arrest and that the United States Marshal may take such actions as are necessary so as to promptly, peacefully and securely repossess the Cargo pending final judgment in the foreign proceedings;

c) That a copy of the Amended Complaint, Order and Warrant for Arrest be served upon any lightering vessel that removes the Cargo from the UNITED KALAVRVTA and brings it within this District;

d) That, after arrest, the Court permit Plaintiff to move the Cargo, under the supervision of the United States Marshal, to a storage facility in order to allow for the safekeeping of the Cargo but to allow for the free movement of the Vessel;

e) That all persons claiming any interest in the Cargo may be cited to appear and answer the matters aforesaid;

f) That the Court order, adjudge and decree that Plaintiff have a decree against Defendant Ministry of Natural Resources of Kurdistan for the claim asserted by Plaintiff herein, together with interest and costs;

g) That the Court order process to attach to the Cargo;

h) That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the Defendant in the Iraqi proceedings;

i) The Court award Plaintiff such other and further relief that this Court deems just and proper.

Dated August 1, 2014.

Respectfully submitted,

**VINSON & ELKINS LLP**

_____
PHILLIP B. DYE, JR.
Attorney-in-Charge
Federal ID No. 7216
State Bar No. 06311500
**James L. Loftis**
Federal ID No. 29739
State Bar No. 12491210
**John J. Michael**
Federal ID No. 36495
State Bar No. 24041480
Telephone: 713-758-2048
Facsimile: 713-615-5766
1001 Fannin Street
Suite 2500
Houston, Texas 77002
pdye@velaw.com; jmichael@velaw.com;
jloftis@velaw.com

**Liane Noble**
Federal ID No. 2329197
State Bar No. 24079059
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Telephone: 512-542-8505
Facsimile: 512-236-3234
lnoble@velaw.com

**ATTORNEYS FOR PLAINTIFF
MINISTRY OF OIL OF THE
REPUBLIC OF IRAQ**