# CHAFFE McCALL

**L. L. P.**
LAW OFFICES
801 TRAVIS STREET, SUITE 1910
HOUSTON, TEXAS 77002
(713) 546-9800
FAX (713) 546-9806

HAROLD K. WATSON
Partner

E-mail: watson@chaffe.com

August 25, 2014

**VIA HAND DELIVERY**
Hon. Gray H. Miller
United States District Judge
United States District Court for the Southern District of Texas,
Houston Division
515 Rusk Ave.
Houston, Texas 77002

Re: *Ministry of Oil of the Republic of Iraq v. 1,032,212 Barrels of Crude Oil aboard the UNITED KALAVRVTA [sic, read KALAVRTYA] and the Ministry of Natural Resources of the Kurdistan Regional Governate [sic, read "Government"] of Iraq*; Civil Case No. 3:14-CV-249

Dear Judge Miller:

At the hearing on Friday, August 22, 2014, undersigned counsel pointed out that in addition to the fact that the Ministry of Oil of the Republic of Iraq ("the MoO") cannot meet the locality requirement for admiralty tort jurisdiction, the MoO faces an insurmountable burden in satisfying the maritime nexus test. In an attempt to come up with a counterargument, the MoO cited the decision in *Blue Whale Corporation v. Grand China Shipping Development Co., Ltd.*,[1] a case the MoO failed to cite in its opposition brief. A copy of this decision is attached. This decision provides no basis whatsoever for the MoO's proposition that this dispute, which involves the question of whether the Kurdistan Regional Government ("the KRG") has the authority under the Iraqi constitution and the laws of Iraq and Kurdistan to export oil produced in Kurdistan,[2] is a "case of admiralty or maritime jurisdiction" within the meaning of Article III of the United States Constitution and 28 U.S.C. § 1333.

In *Blue Whale*, Blue Whale entered into a charter party with Development. Development failed to pay the freight due under the charter party. Blue Whale commenced arbitration

---

[1] 722 F.3d 488 (2d Cir. 2013).
[2] The KRG also believes that has the right to extract and sell oil produced within its own territory under public international law, separate and apart from its right to do so under Iraqi law. Needless to say, this question does not implicate maritime law.

1

2324119-1

proceedings against Development, and filed suit in federal court seeking, pursuant to Rule B, to attach property belonging to HNA, a company that Blue Whale alleged was an alter ego of Development. HNA moved under Rule E(4)(f) to vacate the attachment. "Neither party disputed that Blue Whale had alleged a claim sounding in admiralty and that the court had maritime jurisdiction."[3] Instead, the only issue was what substantive law controlled whether Blue Whale had alleged a prima facie case to pierce the corporate veil. Obviously, this is not the issue here.

Contrary to the MoO's suggestion, *Blue Whale* is irrelevant to the question of whether this Court has admiralty tort jurisdiction over the MoO's claim that the KRG does not have the right under Iraqi law to export oil from Kurdistan. *Blue Whale* did not involve a question of admiralty tort jurisdiction, and, in fact, did not involve a question of jurisdiction at all, since a claim arising under a charter party is unquestionably a claim within the court's admiralty contract jurisdiction and all parties conceded that the court had admiralty jurisdiction. *Blue Whale* involved a question of choice of law, an issue not present in this case, since both parties agree that Iraqi law governs the question of whether the KRG's exportation of oil from Kurdistan constituted a conversion.

However, the MoO's citation of *Blue Whale* does show just how far afield the MoO will go in trying to avoid the well-settled tests for determining admiralty tort jurisdiction. The Supreme Court has made it abundantly clear that the maritime nexus test is a twofold one:

> A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to maritime activity."[4]

The MoO's arguments regarding the maritime nexus requirement focus solely on the first element of this test, and completely ignore the second requirement.

And when one looks more closely at the second requirement of the nexus test, it is easy to understand why the MoO does not want the Court to probe too deeply into this requirement. First, as the KRG has previously pointed out, the second part of the test requires the court to determine "whether a tortfeasor's activity . . . is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand."[5] The KRG's extraction and sale of oil produced in Kurdistan is hardly the sort of activity traditionally subject to admiralty law, and there are no reasons for applying special admiralty rules to this conduct.

---

[3] *Id.* at 491.
[4] *Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (citing *Sisson v. Ruby*, 497 U.S. 358 (1990), (citations omitted).
[5] *Id.* at 539-540.

Second, this inquiry focuses on the "***general character*** of activity giving rise to the incident."[6] As the Supreme Court stated in *Sisson v. Ruby*, "the relevant 'activity' is defined not by the particular circumstances of the incident, but by the general conduct from which the incident arose. In *Executive Jet*, for example, the relevant activity was not a plane sinking in Lake Erie, but air travel generally."[7] The MoO would have this Court focus on the "particular circumstances of the incident," the loading of the oil on the tanker, but it is clear that "the general conduct from which the incident arose" was the KRG's production and exportation of oil. The lawsuit that the MoO filed in the Iraqi courts prior to the oil being loaded on a ship that is attached to the MoO's amended complaint alleges that the KRG "has exported amounts of crude oil and oil products ***through trucks and the pipeline between Kirkuk and the Turkish port of Ceyhan***," and that this conduct "constitutes a flagrant violation of the Iraqi Constitutional texts and the Federal laws in force, whereas the exportation of oil in exclusive power of the Ministry of Oil." The KRG, of course, denies that its extraction and export of oil from Kurdistan is inconsistent with the Iraqi Constitution. But for purposes of this action, it is plain that the MoO believes that the "general character of the activity" at issue is the KRG's exportation of the oil, since it filed suit complaining that the KRG was exporting oil by truck and pipeline before the oil was ever loaded on the UNITED KALAVRYTA. If the KRG had exported the oil solely by truck, pipeline or rail car, the MoO's basic claim would not have been any different, *i.e.*, they claim the oil should not be exported by the KRG because it belongs to the Iraqi people and should only be sold by the Iraqi central government. These are not maritime issues.

When one gets past the red herrings like *Blue Whale* and focuses on the test established by the Supreme Court for admiralty tort jurisdiction, it is clear that the MoO cannot meet the maritime nexus test. Accordingly, the KRG respectfully submits that the motion to vacate should be granted and the case dismissed.

Very truly yours,

Harold K. Watson

HKW:ls
Enclosure

cc:   Phillip B. Dye, Jr.
      John J. Michael
      Vinson & Elkins LLP
      1001 Fannin Street, Ste. 2500
      Houston, Texas 77002

---

[6] *Id.* (emphasis added).
[7] 497 U.S. at 364.

3

2324119-1

Liane Noble
Vinson & Elkins LLP
2801 Via Furtuna, Ste. 100
Austin, Texas 78746

Michael J. Gottlieb
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

Lee S. Wolosky
Christopher E. Duffy
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022

Gary Born
Wilmer Cutler Pickering Hale and Dorr LLP
49 Park Lane
London
W1K 1PS
United Kingdom

David W. Odgen
David W. Bowker
David Z. Gringer
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006

Dimitri Georgantas (Firm)
Adelaida Ferchmin (Firm)
Alan Davis (Firm)



1 of 53 DOCUMENTS

Caution
As of: Aug 22, 2014

**BLUE WHALE CORPORATION, Plaintiff-Appellant, -v.- GRAND CHINA SHIPPING DEVELOPMENT CO., LTD, AKA SHANGHAI GRAND CHINA SHIPPING DEVELOPMENT CO., LTD., GRAND CHINA LOGISTICS HOLDING (GROUP) COMPANY LIMITED, HNA GROUP CO. LTD., Defendants-Appellees.**

Docket No. 13-0192-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

722 F.3d 488; 2013 U.S. App. LEXIS 14339; 2014 AMC 145

April 17, 2013, Argued
July 16, 2013, Decided

**PRIOR HISTORY:** [**1]
Plaintiff-Appellant Blue Whale Corporation ("Blue Whale") appeals from the January 11, 2013 Order by the United States District Court for the Southern District of New York (Nathan, J.) vacating its prior Rule B maritime attachment order against Defendant-Appellee HNA Group Company, Ltd. ("HNA"). Contracting parties Blue Whale and Defendant-Appellee Grand China Shipping Development Company, Ltd. ("Development") are currently engaged in arbitration in London to resolve a dispute that arose out of the parties' maritime shipping contract. In anticipation of an rbitration award against Development, Blue Whale brought a rule B claim in the Southern District of New York against evelopment's alleged alter ego, HNA, seeking to attach pproximately $1.3 million worth of HNA assets located in ew York. The district court vacated the Rule B attachment rder after Defendants-Appellees challenged the sufficiency f Blue Whale's alter-ego claim under *Rule E(4)(f)*. The istrict court evaluated the prima facie validity of Blue Whale's veil-piercing claim under English law, pursuant to the choice-of-law provision in the charter party, and determined that Blue Whale had insufficiently alleged that HNA was [**2] an alter ego of Development. Because we find that Blue Whale's alter-ego claim was collateral to the contractual dispute and that English law did not govern, we apply federal maritime conflicts-of-law analysis to determine the governing law. Accordingly, we VACATE the district court's order and REMAND with instructions to re-evaluate the prima facie validity of Blue Whale's claim under federal common law.

**DISPOSITION:** VACATED AND REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff, a foreign company with a Liberian business address, appealed from the U.S. District Court for the Southern District of New York's order vacating the prior *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions B* maritime attachment order against one of the defendants, an alleged alter ego. Another defendant was a Chinese company which had entered into a charter party with plaintiff.

**OVERVIEW:** Did plaintiff (P) plead a valid prima facie admiralty claim against the alleged alter ego defendant in satisfaction of the first prong of Aqua Stoli? This evaluation required answering: (1) whether P's claim against the alleged alter ego sounded in admiralty; and (2) whether the claim was prima facie valid. Each of these questions, in turn, necessitated determining the governing body of law. The *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions B* inquiry was procedural in part and substantive in part. The district court properly applied federal maritime law to the procedural question of whether P's claim sounded in admiralty. The claim did

sound in admiralty because it arose out of a maritime contract. The issue of the claim's prima facie validity was a substantive inquiry. However, the application of English law to this question was improper because the charter party's choice-of-law provision did not govern P's collateral alter-ego claim. Instead, the court drew on maritime choice-of-law principles to hold that although federal common law did not govern every claim of this nature, federal common law applied here, primarily because of the collateral claim's close U.S. ties.

**OUTCOME:** The district court's order was vacated and remanded.

**LexisNexis(R) Headnotes**

*Admiralty Law > Practice & Procedure > Attachment & Garnishment > General Overview*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] An appellate court reviews a district court's decision to vacate a maritime attachment for abuse of discretion; however, it reviews de novo any legal determinations on which this discretion rests.

*Admiralty Law > Practice & Procedure > Attachment & Garnishment > General Overview*
[HN2] The U.S. Court of Appeals for the Second Circuit has interpreted *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions B* to permit a plaintiff to obtain an order of attachment if it can show that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. If a plaintiff fails to make this showing when challenged under *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions E*, a district court must vacate the prior order of attachment.

*Admiralty Law > Practice & Procedure > Choice of Law*
[HN3] Federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law.

*Admiralty Law > Practice & Procedure > Attachment & Garnishment > General Overview*
*Admiralty Law > Practice & Procedure > Choice of Law*
[HN4] *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions B* itself does not provide the basis for determining the existence of a valid prima facie admiralty claim. The existence of a valid prima facie claim turns on substantive law. Where the substantive law underlying the claim is foreign, it would make no sense to determine the claim's prima facie validity under U.S. law.

*Admiralty Law > Practice & Procedure > Choice of Law*
[HN5] Admiralty law provides the remedy; substantive law defines the right to the remedy. Assessing the prima facie validity of a claim is a substantive inquiry that should be governed by the relevant substantive law. By contrast, whether a claim sounds in admiralty is a procedural question, the answer to which supplies the source of a court's subject matter jurisdiction.

*Admiralty Law > Practice & Procedure > Choice of Law*
[HN6] Federal maritime law governs whether a claim sounds in admiralty and the relevant substantive law governs whether a plaintiff has alleged a valid prima facie claim. The U.S. Court of Appeals for the Second Circuit uses substantive law to assess the prima facie validity of a plaintiff's claim because substantive law supplies the relevant measure for deciding whether or not the claim is legally sufficient. Of course, this means that courts must apply the correct substantive law -- i.e., the law which defines the rights and responsibilities of the parties to the dispute.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
*Contracts Law > Contract Conditions & Provisions > General Overview*
[HN7] Choice-of-law clauses in underlying contracts are "irrelevant" to assessing alter-ego claims.

*Admiralty Law > Practice & Procedure > Choice of Law*
*Admiralty Law > Practice & Procedure > Jurisdiction*
*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*

[HN8] Admiralty jurisdiction and federal maritime law need not go hand-in-hand, even in the context of examining corporate identity.

*Admiralty Law > Practice & Procedure > Attachment & Garnishment > General Overview*
*Admiralty Law > Practice & Procedure > Choice of Law*
*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
[HN9] The U.S. Court of Appeals for the Second Circuit does not believe that Kirno Hill (or its progeny) compels courts "examining corporate identity" to apply federal common law. That said, it recognizes that district courts frequently have found value in using federal common law to evaluate the validity of collateral claims in *Supp. R. Adm. or Mar. Cl. & Asset Forfeiture Actions B* attachment proceedings. The Court has clarified that the decision of which body of law to apply should be the product of a maritime choice-of-law analysis.

*Admiralty Law > Practice & Procedure > Choice of Law*
*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN10] The rule of Klaxon, under which a federal court exercising its diversity jurisdiction looks to the choice-of-law doctrine of the forum state, does not govern suits invoking the court's admiralty jurisdiction. Thus, when parties properly invoke admiralty jurisdiction, courts apply federal maritime choice-of-law rules.

*Admiralty Law > Practice & Procedure > Choice of Law*
[HN11] Recognizing that maritime law has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved, the U.S. Supreme Court laid out a multi-factor choice-of-law test, the purpose of which is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum. Supplemented by subsequent case law, the non-exhaustive list of factors includes: (1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations. Though the Lauritzen factors speak more directly to tort claims, a modified framework may be invoked in contract actions.

*Admiralty Law > Practice & Procedure > Choice of Law*
[HN12] The U.S. Court of Appeals for the Second Circuit has the aim of ensuring uniformity in admiralty law whenever possible.

**COUNSEL:** GEORGE M. CHALOS (Katherine N. Christodoulatos, Briton P. Sparkman, on the brief), Chalos & Co., P.C., Oyster Bay, NY, for Plaintiff-Appellant.

THOMAS H. BELKNAP, JR. (W. Cameron Beard, Of Counsel, on the brief), Blank Rome LLP, New York, NY, for Defendants-Appellees.

MICHAEL J. FREVOLA (Christopher R. Nolan,Warren E. Gluck, on the brief), Holland & Knight LLP, New York, NY, for Amicus Curiae White Rosebay Shipping S.A.

**JUDGES:** Before: POOLER, WESLEY, DRONEY, Circuit Judges.

**OPINION BY:** WESLEY

**OPINION**

[*490] WESLEY, *Circuit Judge*:

This admiralty law dispute arises from a distinctly international transaction: a Chinese company contracted to transport goods from Brazil to China aboard a Liberian [*491] vessel. The existence of so many foreign interests yields an inherently federal choice-of-law question -- one [**3] we resolve via application of maritime conflicts-of-law principles.

**Background**

Plaintiff-Appellant Blue Whale Corporation ("Blue Whale"), a foreign company,[1] entered into a charter party (a maritime contract) with Defendant-Appellee Grand China Shipping Development Company, Ltd. ("Development"), a Chinese company, on May 25, 2011. The charter party provided for transport of 250,000 metric tons of iron ore from Brazil to China aboard a Blue Whale vessel registered in the republic of Liberia. The contract purportedly required Development to pay 98% of the total freight costs to Blue Whale within seven days of loading the iron ore; allegedly, Development failed to make this payment. Blue Whale therefore held the vessel and its contents until Development satisfied the claimed debt, resulting in more than $1 million in damages borne by Blue Whale. Blue Whale commenced arbitration

against Development in London pursuant to the charter party's clause specifying that "[a]ny disputes arising under the Contract," if not settled amicably, "shall be referred to arbitration in London [with] British law to apply." The arbitration is ongoing.

> 1   Throughout this litigation, Blue Whale is identified only [**4] as a "foreign corporation." We note that Blue Whale lists a business address in Monrovia, Liberia, on a freight invoice issued to Defendant-Appellee Grand China Shipping Development Company, Ltd., and that at least one of Blue Whale's vessels is registered in Liberia.

On March 26, 2012, Blue Whale filed a complaint in the United States District Court for the Southern District of New York seeking to attach property belonging to Development's alleged alter ego, Defendant-Appellee HNA Group Company, Ltd. ("HNA"), also a Chinese company, in anticipation of a future arbitration award against Development. *Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule B")* allows plaintiffs to seek an attachment of "defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process," "[i]f a defendant is not found within the district" at the time the complaint is filed. *FED. R. CIV. P. SUPP. R. B(1)(a)*. Blue Whale alleged that Development and HNA "are in fact a single business enterprise" and that the district court should allow Blue Whale to pierce the corporate veil to reach in-district HNA assets of approximately [**5] $1.3 million.

On May 17, 2012, the district court (Nathan, J.) issued an order authorizing attachment of HNA's holdings in third8 party Pacific American Corporation -- a privately-held direct subsidiary of HNA based in New York -- in an amount up to approximately $1.3 million. HNA subsequently moved to vacate the district court's maritime attachment order under *Rule E(4)(f)*, which provides that a person claiming interest in attached property "shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated." *FED. R. CIV. P. SUPP. R. E(4)(f)*.

Under Rule B, attachment is only appropriate if, *inter alia*, the plaintiff has a valid prima facie admiralty claim against the defendant. Neither party disputed that Blue Whale had alleged a claim sounding in admiralty and that the court had maritime jurisdiction. However, the parties disagreed over what substantive body of law controlled whether Blue Whale had alleged a valid prima facie claim to pierce the corporate veil. HNA argued that English law governed pursuant to the [*492] charter party's choice-of-law provision and that Blue Whale had failed to allege sufficient facts to support [**6] a prima facie alter-ego claim. In response, Blue Whale argued that federal common law controlled the inquiry because Rule B is procedural in nature and, in addition, because "it is well-settled that 'federal courts sitting in admiralty must apply federal common law when examining corporate identity.'"[2] Memorandum of Law in Opposition to Motion to Vacate Maritime Rule B Attachment, at 8-9, *Blue Whale Corp. v. Grand China Shipping Dev. Co., Ltd., et al.*, No. 12 Civ. 02213 (AJN) (S.D.N.Y. 2012).

> 2   Apparently, neither party raised the issue of whether HNA (a non-signatory to the charter party between Blue Whale and Development) could be bound by the English choice-of-law clause. As the district court noted, there are cases that speak to this issue and find that courts may force non-signatories to adhere to choice-of-law clauses. *See, e.g., FR 8 Singapore Pte. Ltd. v. Albacore Maritime Inc.*, 754 F. Supp. 2d 628, 636 (S.D.N.Y. 2010).

The district court separately analyzed the two elements required for Blue Whale's claim: (1) whether the claim sounded in admiralty; and (2) whether the claim was prima facie valid. First, the court held that whether Blue Whale adequately pled an admiralty claim [**7] was a procedural question governed by federal maritime law because it related to the court's subject matter jurisdiction (a point not disputed by the parties). The court therefore exercised maritime jurisdiction over the claim. Second, the district court held that the substantive question of whether Blue Whale had pled a valid prima facie alter-ego claim was controlled by English law pursuant to the contractual choice-of-law provision. Under English law, the court concluded that Blue Whale had not alleged an adequate prima facie claim to pierce the corporate veil, and therefore vacated the attachment.[3]

> 3   The district court also made an alternative ruling supporting vacatur. Under Rule B, attachment is impermissible if a defendant can be "found" within the district. *FED. R. CIV. P. SUPP. R. B(1)(a)*; see also *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), overruled on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009). Because HNA had registered to do business in New York State after the district court issued the Rule B attachment order, the district court reasoned that HNA could now be "found" in [**8] the district and that vacatur was appropriate under *Rule E*. On this basis, the court also denied Blue Whale's request to stay its decision and grant Blue Whale an opportunity to obtain limited discovery and to amend its complaint.

Both Blue Whale and HNA recognize that the district court erred by finding that HNA's post-attachment registration to do business in New York State undermined Blue Whale's basis for a Rule B attachment order. *See ProShipLine, Inc. v. Aspen Infrastructures, Ltd., 585 F.3d 105, 112 n.4 (2d Cir. 2009)* ("The time for determining whether a defendant is 'found' in the district is set at the time of the filing of the verified complaint that prays for attachment and the affidavit required by *Rule B(1)(b)*."); *see also Marimed Shipping Inc. v. Persian Gulf Shipping Co. Inc., 567 F. Supp. 2d 524, 527 (S.D.N.Y. 2008)*. HNA could not be "found" within the district for purposes of Rule B attachment because the text of the rule itself establishes that a defendant is "found within the district when a verified complaint . . . [is] *filed*." FED. R. CIV. P. SUPP. R. *B(1)(a)* (emphasis added). Thus, the district court's alternative basis for vacating the attachment order fails as [**9] a matter of law.

Supported by Amicus Curiae White Rosebay Shipping S.A. ("White Rosebay"),[4] Blue Whale appeals from the district court's January 11, 2013 order vacating the prior Rule B maritime attachment order against HNA.

> 4   White Rosebay's interest in this appeal stems from its separate commencement of two admiralty veil-piercing actions against HNA (and other parties).

[*493] **Discussion**

[HN1] "We review a district court's decision to vacate a maritime attachment for abuse of discretion; however, we review de novo any legal determinations on which this discretion rests." *Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 48 (2d Cir. 2008)*. [HN2] This Court has interpreted *Rule B* to permit a plaintiff to obtain an order of attachment if it can show that

> 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006)*, *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009)*. If a plaintiff [**10] fails to make this showing when challenged under *Rule E*, a district court must vacate the prior order of attachment. *Id.*

The principal issue on appeal is whether Blue Whale satisfied its burden of pleading a valid prima facie admiralty claim against HNA in satisfaction of the first prong of *Aqua Stoli*. As the district court recognized, this evaluation requires us to answer two questions: (1) whether Blue Whale's claim against HNA sounds in admiralty; and (2) whether the claim is prima facie valid. Each of these questions, in turn, necessitates determining the governing body of law. For the reasons explained below, we conclude that the district court properly applied federal maritime law to the procedural question of whether Blue Whale's claim sounds in admiralty, and we agree that the claim does sound in admiralty because it arose out of a maritime contract.

We also agree with the district court that the issue of the claim's prima facie validity is a substantive inquiry. We conclude, however, that the district court's application of English law to this question was improper because the charter party's choice-of-law provision does not govern Blue Whale's collateral alter-ego claim against [**11] HNA. Instead, we draw on maritime choice-of-law principles to hold that although federal common law does not govern every claim of this nature, federal common law does apply here, primarily because of the collateral claim's close ties to the United States. We remand for reconsideration by the district court of the prima facie validity of Blue Whale's alter-ego claim under federal common law.

**I. The Rule B Inquiry Is Procedural in Part and Substantive in Part**

"There is a split of authority" in the Southern District of New York on the issue of what law governs "whether [a] plaintiff has pled a facially valid admiralty claim . . . and the Second Circuit has not ruled on it." *Al Fatah Int'l Nav. Co. Ltd. v. Shivsu Canadian Clear Waters Tech.(P) Ltd., 649 F. Supp. 2d 295, 299 (S.D.N.Y. 2009)*. Some district courts within this Circuit presume that "federal law governs all questions concerning the validity of a Rule B attachment." *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd., No. 08-cv-5435 (BSJ), 2008 U.S. Dist. LEXIS 101313, 2008 WL 4905460, at *2 (S.D.N.Y. Aug. 7, 2008)* (assessing whether plaintiffs pled a valid maritime claim).[5] [*494] Other district courts reason that despite *Rule B*'s "undoubted[]" status as a procedural [**12] rule, "*Rule B* itself does not provide the basis for determining the existence of a valid prima facie admiralty claim," and instead, "the existence of a valid prima facie claim turns on substantive law." *Al Fatah, 649 F. Supp. 2d at 300*.[6]

5   See also *Emeraldian Ltd. P'ship v. Wellmix Shipping Ltd.*, No. 08 Civ. 2991 (RJH), 2009 U.S. Dist. LEXIS 89355, 2009 WL 3076094, at *2-3 (S.D.N.Y. Sep. 28, 2009) (applying federal common law without discussion of English choice-of-law clause in charter party); *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09 Civ. 4483 (GEL), 2009 U.S. Dist. LEXIS 64663, 2009 WL 2223581, at *2-3 (S.D.N.Y. July 27, 2009) (agreeing that "the better view is that federal law governs all questions concerning the validity of a Rule B attachment," but specifically deciding that federal law governs whether plaintiff alleged a valid maritime claim (internal quotation marks omitted)); *Budisukma Permai SDN BHD v. N.M.K. Prods. & Agencies Lanka (Private) Ltd.*, 606 F. Supp. 2d 391, 395-96 (S.D.N.Y. 2009) (discussing choice of law in the context of deciding whether plaintiff had a valid maritime claim).

6   See also *Indagro S.A. v. Bauche S.A.*, 652 F. Supp. 2d 482, 489-90 & 490 n.9 (S.D.N.Y. 2009) (outlining the dispute and finding that [**13] law of the contract governs whether plaintiff pled a valid prima facie claim and federal law governs whether that claim sounds in admiralty); *Kulberg Fins. Inc. v. Spark Trading D.M.C.C.*, 628 F. Supp. 2d 510, 515, 518-19 (S.D.N.Y. 2009) (endorsing "numerous courts[']" view that "existence of a valid prima facie admiralty claim turns on the . . . law of the contract"); *Precious Pearls, Ltd. v. Tiger Int'l Line Pte Ltd.*, No. 07 Civ. 8325 (JGK), 2008 U.S. Dist. LEXIS 58453, 2008 WL 3172998, at *2 (S.D.N.Y. July 31, 2008) (without discussion, applying English law pursuant to contract clause to assess whether contingent indemnity claim was ripe); *Sonito Shipping Co., Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532, 536 (S.D.N.Y. 2007) ("The existence vel non of a valid maritime claim for purposes of a Rule B writ of attachment turns upon the applicable substantive law, in this case the law of contract.").

### A. Whether a Claim Sounds in Admiralty Is a Procedural Question Governed by Federal Maritime Law

Despite the divide, what is clear is that [HN3] federal law controls the procedural inquiry, namely, whether a plaintiff's claim sounds in admiralty. *See id. at 299 n.4*; *Euro Trust Trading S.A. v. Allgrains U.K. Co.*, No. 09 Civ. 4483 (GEL), 2009 U.S. Dist. LEXIS 64663, 2009 WL 2223581, at *3 (S.D.N.Y. July 27, 2009). [**14] This question is inherently procedural by virtue of its relationship to the courts' subject matter jurisdiction and, thus, is controlled by federal maritime law. Here, the parties do not dispute that Blue Whale's claim sounds in admiralty because it arises out of a maritime contract. The more difficult question is whether federal law also controls a court's assessment of the validity of a plaintiff's prima facie claim.

### B. Whether a Claim Is Prima Facie Valid Is a Substantive Question Governed by the Relevant Substantive Law

If the prima facie validity component of the inquiry is procedural in nature, federal law will control; if it is substantive, the relevant substantive body of law will control. The district courts in the Southern District of New York have laid out the competing arguments for us. In *Harley Mullion & Co. Ltd. v. Caverton Marine Ltd.*, the court explained its reasoning for finding that "the better view is that federal law governs all questions concerning the validity of a Rule B attachment" as follows:

> If, in order to comply with the requirements set forth in *Aqua Stoli*, a claim must be valid under the substantive law that will govern the underlying action, parties initiating [**15] or responding to a Rule 4(E) [sic] challenge would be routinely required to litigate issues of foreign law and courts would have to probe into the merits of the underlying claim. This sort of detailed examination is inappropriate at a Rule 4(E) [sic] hearing as it would undermine the prima facie standard and is at odds with the limited inquiry contemplated by *Aqua Stoli*.

No. 08-cv-5435 (BSJ), 2008 U.S. Dist. LEXIS 101313, 2008 WL 4905460, at *2 (S.D.N.Y. Aug. 7, 2008) (internal [*495] quotation marks omitted). By contrast, in *Al Fatah*, the district court rejected this position because

> [HN4] Rule B itself does not provide the basis for determining the existence of a valid prima facie admiralty claim. . . . [T]he existence of a valid prima facie claim turns on substantive law. Where the substantive law underlying the claim is foreign, it would make no sense to determine the claim's prima facie validity under U.S. law.

649 F. Supp. 2d at 300. Then-District Judge Chin further explained that his "conclusion [was] not inconsistent with *Aqua Stoli*[]" because even if an inquiry conducted under foreign law might be "more difficult" than the same assessment under United States law, "it need not necessarily be any more rigorous." *Id.*

We agree [**16] with Judge Chin's reasoning. [HN5] Admiralty law provides the remedy; substantive law defines the right to the remedy. Assessing the prima facie validity of a claim is a substantive inquiry that should be governed by the relevant substantive law. By contrast, whether a claim sounds in admiralty is a procedural question, the answer to which supplies the source of a court's subject matter jurisdiction.

As the district court here recognized, the decisions incorporating the reasoning in *Harley Mullion* typically do so in the context of resolving a dispute over whether a plaintiff has sufficiently alleged an *admiralty* claim -- not whether a plaintiff has pled a *valid prima facie claim*. *See Indagro S.A. v. Bauche S.A., 652 F. Supp. 2d 482, 490 (S.D.N.Y. 2009)* ("Where the question is not whether the claim is maritime in nature, but rather whether the plaintiff has pled a 'valid' claim at all, courts in this District have considered whether the plaintiff alleged a prima facie claim under the substantive law governing the parties' dispute."). As a result, in these cases, statements to the effect that all Rule B queries are procedural in nature and are governed by federal law effectively constitute dicta [**17] -- no one disagrees that federal law controls the determination of whether a claim sounds in admiralty.

We hold that [HN6] federal maritime law governs whether a claim sounds in admiralty and that the relevant substantive law governs whether a plaintiff has alleged a valid prima facie claim. We use substantive law to assess the prima facie validity of a plaintiff's claim because substantive law supplies the relevant measure for deciding whether or not the claim is legally sufficient. Of course, this means that courts must apply the correct substantive law -- i.e., the law which defines the rights and responsibilities of the parties to the dispute. This introduces the more difficult question in this case: what substantive law controls the validity of Blue Whale's alter-ego claim?

## II. Federal Maritime Choice-of-Law Analysis Determines the Relevant Substantive Law

There are three approaches for evaluating what law governs Blue Whale's alter-ego claim in this case: invoking the charter party's choice-of-law provision, which specifies English law; automatically applying federal common law because the court is "examining corporate identity"; or engaging in a federal maritime choice-of-law analysis. [**18] Because we find that the charter party's choice-of-law clause does not govern this collateral alter-ego claim, we hold that federal maritime choice-of-law principles dictate the proper controlling substantive law. In this case, a maritime choice-of-law analysis yields federal common law as the relevant governing law by virtue of the claim's connection to the United States.

[*496] *A. The Contractual Choice-of-Law Clause Does Not Control Because the Alter-Ego Claim Is Collateral*

First, we reject HNA's contention, and the district court's conclusion, that the charter party's choice-of-law clause requires applying English substantive law to govern this dispute. *Kalb, Voorhis & Co. v. American Financial Corp., 8 F.3d 130, 132 (2d Cir. 1993)*, teaches us that [HN7] choice-of-law clauses in underlying contracts are "irrelevant" to assessing alter-ego claims. In that case, Kalb, the plaintiff, held debentures (collateral-free debts or notes) issued by third-party corporation Circle K. *Id. at 131*. After Circle K filed for bankruptcy under Chapter 11, Kalb sued as a creditor of Circle K to pierce the corporate veil and impose liability for the debentures on the defendant, a former controlling stockholder of [**19] Circle K. *Id.* Shortly thereafter, Circle K asserted its own rights to pierce the veil against the defendant; the question in the case was "whether a claim alleging that the debtor or bankrupt is the alter ego of its controlling stockholder" belonged to Circle K or Kalb. *Id. at 132*.

In considering the choice of law in this diversity case, we determined that it was appropriate to apply the choice-of-law principles of the forum state (New York) rather than relying on the choice-of-law clause in the debentures. *Id.* We noted that "[t]he choice of law provisions in the debentures [were] irrelevant [because t]he issue is the limited liability of shareholders of a corporation -- not Circle K's obligations under the debentures." *Id.*

Similarly, here the issue is HNA's legal status as an alter ego of Development, not the obligations under or subsequent alleged violations of the charter party between Development and Blue Whale. Blue Whale's claim against HNA sounds in admiralty because it arose from this maritime contract -- however, the substance of the attachment claim concerns whether HNA is an alter ego of Development. This corporate identity inquiry is indeed distant from the dispute over the [**20] charter party's provisions regarding the transport of iron ore. For this reason, we find that "the issue of piercing the corporate veil is collateral to the contract, and thus this Court is not bound by the choice of law provision." *United Trade Assocs. Ltd. v. Dickens & Matson (USA) Ltd., Inc., 848 F. Supp. 751, 759 (E.D. Mich. 1994); see also Wehage v. EmpRes Healthcare Inc., 821 F. Supp. 2d 1122, 1127-28 (N.D. Cal. 2011); JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc., 295 F. Supp. 2d 366, 385-86 (S.D.N.Y. 2003)* (determining that action to enforce judgment was "in no way connected to or related to the performance of the

shipment contracts" and that arbitration clause did not govern).[7]

> 7 There are a number of cases that indicate that had Blue Whale prevailed at the London arbitration proceeding in advance of bringing an action for attachment or enforcement in the United States, federal common law and not English law would govern the court's evaluation of HNA's alleged alter-ego status. *See, e.g., Bridas S.A.P.I.C. v. Gov. of Turkmenistan, 345 F.3d 347, 353, 358-60 (5th Cir. 2003)* (remanding after applying federal common law instead of contractually-specified [**21] English law to determine whether Government of Turkmenistan was subject to arbitration, and thus liable for arbitration award, as alleged alter ego of contracting party) (*cited favorably in Compagnie Noga D'Importation et D'Exportation, S.A. v. Russian Federation, 361 F.3d 676, 686 (2d Cir. 2004)*).

### B. *Federal Common Law Does Not Apply Automatically for "Examining Corporate Identity"*

Second, we reject the proposition advanced by Blue Whale and White Rosebay that federal common law *automatically* governs the alter-ego claim. Blue [*497] Whale and Amicus Curiae White Rosebay cite numerous cases for the proposition that

> courts in this Circuit have consistently held . . . [that] '[f]ederal courts sitting in admiralty must apply federal common law when examining corporate identity.'

*Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC, 851 F. Supp. 2d 504, 507-08 (S.D.N.Y. 2012)* (quoting *In re Holborn Oil Trading Ltd., 774 F. Supp. 840, 844 (S.D.N.Y. 1991))*.[8] However, many of these cases, as well as matters cited more broadly in support,[9] are focused principally on the scope of courts' admiralty jurisdiction, rather than on the source of substantive law. [HN8] Admiralty jurisdiction and federal [**22] maritime law need not go hand-in-hand, *see, e.g., Lauritzen v. Larsen, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953)*, even in the context of examining corporate identity.

> 8 *See also Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd., 801 F. Supp. 2d 211, 223 (S.D.N.Y. 2011)* (applying federal common law to evaluate plaintiff's claim to enforce arbitration award against alleged alter-ego defendants); *Emeraldian, 2009 U.S. Dist. LEXIS 89355, 2009 WL 3076094, at *2-3* (applying federal common law to assess validity of plaintiff's prima facie alter-ego maritime claim without discussing applicability of English choice-of-law provision); *Arctic Ocean Int'l Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46, 53 (S.D.N.Y. 2009)* (same).
>
> 9 *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S. Ct. 861, 94 L. Ed. 1206 (1950); Williamson, 542 F.3d at 49-50; see also Williamson v. Recovery Ltd. P'ship, No. 06 Civ. 5724 (LTS)(FM), 2007 U.S. Dist. LEXIS 4438, 2007 WL 102089, at *2 (S.D.N.Y. Jan. 16, 2007)* ("The choice of law clauses, whatever their significance in the ultimate determination of the merits of the dispute, do not divest the federal court of subject matter jurisdiction."); *see also Budisukma, 606 F. Supp. 2d 391* (adopting *Harley Mullion* analysis to decide [**23] primary issue of whether plaintiff's claim was maritime in nature and not specifying whether reasoning for applying federal common law, instead of English law, to assess validity of alter-ego claims was on a similar basis).

It appears that this Court's decision in *Kirno Hill Corp. v. Holt, 618 F.2d 982 (2d Cir. 1980)* (per curiam), is at the root of the principle that federal common law governs the analysis of corporate identity. *Kirno Hill* did not involve *Rule B*, a contract specifying choice of law, international parties or contracts, or, in fact, any quarrel over choice of law. Instead, the case centered around a dispute over personal liability for obligations under a charter party. *Id. at 984*. We applied federal maritime law, "which is the law we apply in an admiralty case," to determine whether an undisclosed principal was bound by contracts made by an agent acting within his authority. *Id. at 985*.

Subsequent cases citing *Kirno Hill* for the proposition that federal common law dictates whether or not a maritime plaintiff has sufficiently pled a claim to pierce the corporate veil tend to proceed along one of two lines. First, there are cases like *Clipper Wonsild Tankers Holding A/S v. Biodiesel Ventures, LLC, 851 F. Supp. 2d 504 (S.D.N.Y. 2012)*, [**24] opining that courts must choose between state law and federal common law. In *Clipper*, alleged alter-ego defendants argued that plaintiffs' Rule B claims should be governed by Texas law because of the parties' diversity and defendants' status as Texas corporations. *Id. at 506-07*. The district court disagreed because plaintiffs had expressly (and properly) invoked the court's admiralty jurisdiction since a charter party lay at the center of the dispute. *Id. at 507-08*. This result strikes us as correct. When the choice is between state law and federal common law, the federal interest in maintaining uniformity in the quintessentially federal

realm of admiralty supersedes any competing interest in applying state law. *See generally Am. Dredging Co. v. Miller*, [*498] *510 U.S. 443, 114 S. Ct. 981, 127 L. Ed. 2d 285 (1994)*.

Second, there are Rule B attachment cases in which district courts must grapple with foreign parties' disputes that arose (or sometimes sank) in foreign waters. In *Arctic Ocean International, Ltd. v. High Seas Shipping Ltd., 622 F. Supp. 2d 46 (S.D.N.Y. 2009)*, for example, a Russian plaintiff-company secured a Rule B attachment order in the Southern District of New York against a Marshall Islands defendant-company [**25] and an alleged alter-ego Canadian defendant-company. *Id. at 47-48*. In evaluating the alleged alter ego's attack on the attachment order,[10] the district court assessed the prima facie validity of plaintiff's alter-ego claim under federal common law. *Id. at 53-56*. The district court applied federal common law instead of Russian law, Marshall Islands law, Canadian law or English law (which was specified by the charter party's arbitration choice-of-law provision, *id. at 48*) because "federal courts sitting in admiralty have tended to apply federal maritime common law," *id. at 53* (citing *In re Holborn*, 774 F. Supp. at 844).

> 10 The alleged alter-ego defendant moved to dismiss the complaint under *Rules 12(b)(2)* and *12(b)(6)* rather than challenging the attachment under *Rule E(4)(f)* because no property had actually been attached in the approximately eleven months that the Rule B order had been in force. *Arctic Ocean, 622 F. Supp. 2d at 50*. However, as the district court recognized, defendant's arguments "would have similar force at a Rule E(4)(f) hearing." *Id.*

Although the district court may well have reached the correct result in *Arctic Ocean*, [HN9] we do not believe that *Kirno Hill* (or its progeny) [**26] compels courts "examining corporate identity" to apply federal common law. That said, we recognize that district courts frequently have found value in using federal common law to evaluate the validity of collateral claims in Rule B attachment proceedings. Our aim today is to clarify that the decision of which body of law to apply should be the product of a maritime choice-of-law analysis.

*C. Maritime Choice-of-Law Analysis Shows that Federal Common Law Controls Because United States Law Has the Strongest Connection to the Relevant Transaction*

The Supreme Court first announced the maritime conflicts-of-law test in *Lauritzen v. Larsen, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953)*. [HN10] "The rule of *Klaxon Co. v. Stentor Electric Mfg. Co.*[], under which a federal court exercising its diversity jurisdiction looks to the choice-of-law doctrine of the forum state, does not govern suits invoking the court's admiralty jurisdiction." *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Serv. Ltd., No. 86 Civ. 1313 (RLC), 1988 U.S. Dist. LEXIS 7051, 1988 WL 75262, at *2 (S.D.N.Y. July 13, 1988)*. Thus, when parties properly invoke admiralty jurisdiction, courts apply federal maritime choice-of-law rules. *Id.*

In *Lauritzen*, a Danish seaman brought suit in the [**27] Southern District of New York under the Jones Act, *46 U.S.C. § 688*, alleging that he was negligently injured aboard a ship of Danish flag and registry while in Havana harbor. *345 U.S. at 573*. The ship was owned by a Danish citizen, and the injured seaman had signed the ship's articles providing that disputes would be governed by Danish law. *Id.* Nevertheless, he sought to invoke United States law. *Id.*

[HN11] Recognizing that "[m]aritime law . . . has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are [*499] involved," *id. at 582*, the Supreme Court laid out a multi-factor choice-of-law test,[11] "[t]he purpose of [which] is to assure that a case will be treated n [sic] the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum," *id. at 591*. In *Lauritzen*, the balance of factors clearly pointed to application of Danish law: the injured seaman had minimal contacts with the United States beyond the intangible -- his desire to invoke this nation's more favorable maritime tort law. *Id. at 592*.

> 11 Supplemented by subsequent [**28] case law, the non-exhaustive list of factors includes: "(1) the place of the wrongful act; (2) the law of the ship's flag; (3) the domicile of the injured party; (4) the domicile of the shipowner; (5) the place of the contract; (6) the inaccessibility of the foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations." *Carbotrade S.p.A. v. Bureau Veritas, 99 F.3d 86, 90 (2d Cir. 1996)* (citing *Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 309, 90 S. Ct. 1731, 26 L. Ed. 2d 252 (1970); Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 382, 79 S. Ct. 468, 3 L. Ed. 2d 368 (1959); Lauritzen, 345 U.S. at 583-92*). Though the *Lauritzen* factors speak more directly to tort claims, a modified framework may be invoked in contract actions. *See Rainbow Line, Inc. v. M/V Tequila, 480 F.2d 1024, 1026-27 (2d Cir. 1973); see also Itel Containers, 1988 U.S. Dist. LEXIS 7051, 1988 WL 75262, at *2*.

Here, by contrast, Blue Whale initiated this proceeding in the United States, and specifically in the

Southern District of New York, because that is where HNA owns property. Blue Whale did not invoke the Southern District of New York's admiralty jurisdiction by serendipity -- the presence of HNA's property enabled this action and, along with it, the application of federal maritime [**29] law. Furthermore, the basic tenet upon which *Lauritzen* is premised will be satisfied here by using federal common law because its application reflects an implicit "resol[ution of] conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved." *Id. at 582*.

As is often the case in admiralty, we deal here with multi-national foreign parties locked in dispute as the result of an alleged breach of an international shipping contract. Indeed, part of the reason we authorize maritime attachment is the "peripatetic" nature of maritime parties, the "transitory" status of their assets, *Aqua Stoli, 460 F.3d at 443*, and the need for parties to obtain security "[i]n a world of shifting assets, numerous thinly-capitalized subsidiaries, flags of convenience and flows of currencies," *Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007)* (citing *Aurora Maritime v. Abdullah Mohamed Fahem & Co., 85 F.3d 44 (2d Cir. 1996))*.

This particular case arose from a charter party between a Chinese company, Development, and another foreign company, Blue Whale, to ship [**30] iron ore from Brazil to China on a Liberian vessel. This narrative yields several potential sources of law; none have a particularly strong connection to the transaction. The facts here contrast strongly with the facts in *Lauritzen*, where all parties, the ship, and the contract itself exhibited strong ties to Denmark. *345 U.S. at 573*.

Importantly, however, the relevant "transaction" in this case is *not* Development's alleged failure to comply with the charter party -- it is Blue Whale's claim to pierce the corporate veil. The district court in this Rule B action is charged only with determining whether Blue Whale stated a prima facie valid alter-ego claim against HNA in furtherance of its motion to attach HNA's property in New York. Accordingly, United States law has the [*500] strongest "points of contact" with this claim by virtue of the location of HNA's property, Blue Whale's corresponding choice of forum and the unavailability of an alternative forum, and the absence of a dominant foreign choice of law.

On a final note, we recognize the value of simplifying the judicial process required for Rule B attachments and Rule E motions to vacate when feasible. *See generally Aqua Stoli, 460 F.3d at 443-44*. [**31] As we have articulated, this does not excise the judicial obligation to apply the governing substantive law to assess the prima facie validity of a Rule B admiralty claim when challenged in a Rule E proceeding. But here, for the reasons discussed, we identify federal common law as the proper substantive body of law to govern Blue Whale's alter-ego claim against HNA. This follows from the ideas underpinning the *Lauritzen* choice-of-law analysis and from [HN12] our aim of ensuring uniformity in admiralty law whenever possible. Accordingly, we vacate the district court's order and remand for reconsideration of the prima facie validity of Blue Whale's Rule B alter-ego claim under federal common law. *See Williamson, 542 F.3d at 53; Clipper, 851 F. Supp. 2d at 509-10*.

**Conclusion**

For the foregoing reasons, the order of the district court is hereby VACATED and REMANDED.