**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| MINISTRY OF OIL OF | § | |
| THE REPUBLIC OF IRAQ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION G-14-249 |
| vs. | § | |
| | § | **ADMIRALTY** – FED. R. CIV. P. 9(h) |
| 1,032,212 BARRELS OF CRUDE OIL, | § | |
| THE KURDISTAN REGION OF IRAQ, | § | |
| AND JOHN DOE BUYER, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF MINISTRY OF OIL OF THE REPUBLIC OF IRAQ'S SECOND AMENDED VERIFIED COMPLAINT AND REQUEST FOR MARITIME ARREST, POSSESSION OR WRIT OF ATTACHMENT, AND APPLICATION FOR STATE LAW WRIT OF SEQUESTRATION**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff the Ministry of Oil of the Republic of Iraq ("MoO") and files suit against the 1,032,212 net barrels of crude oil (the "Cargo") aboard the UNITED KALAVRVTA IMO# 92090397 (the "Vessel"), *in rem,* and against the Kurdistan Region of Iraq ("The Kurdistan Region" or "Iraqi Kurdistan") and currently unidentified John Doe Buyer, *in personam*, and avers as follows:

**I. PRELIMINARY STATEMENT**

1.     This is a case of admiralty and maritime jurisdiction and is an admiralty or maritime claim within the meaning of Federal Rule of Civil Procedure 9(h) and brought pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims.  The action is also brought against Iraqi Kurdistan pursuant to the Foreign Sovereign Immunities Act and John Doe Buyer pursuant to federal maritime law and/or Texas state law.

1

2.      Plaintiff seeks repossession of the Cargo which was unlawfully loaded on the UNITED KALAVRVTA when the Vessel was docked on navigable waters outside Ceyhan, Turkey and was subsequently unlawfully sold to defendant John Doe Buyer.

## II. PARTIES

3.      ***Plaintiff.***  Plaintiff MoO is a ministry of the Government of the Republic of Iraq ("Iraq"), a foreign sovereign, and maintains its principal office in Baghdad, Iraq.  The MoO is a foreign state within the meaning of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603. The MoO does not intend to waive sovereign immunity by filing this Complaint.  Under Iraq's domestic law, the MoO is entitled to bring claims on behalf of the Republic of Iraq related to oil owned by the people of the Republic of Iraq.

4.      ***Defendant in rem.***  The Defendant *in rem* is 1,032,212 barrels of crude oil, which is the property of the MoO and in which the MoO has a maritime lien as a result of the maritime tort of tortious interference.  The Cargo is currently located aboard the UNITED KALAVRVTA, IMO # 92090397, which was and is a Marshall Islands flagged, ocean-going oil tanker vessel engaged in the carriage of oil products by sea for hire between various foreign and domestic ports.  On information and belief, the Cargo now aboard the UNITED KALAVRVTA is now, or during the pendency of this action will be, within this District and within the jurisdiction of this Court.

5.      ***Defendant in personam:  Iraqi Kurdistan.***  Iraqi Kurdistan is a subsidiary region of Iraq under Iraqi law and maintains its principal office in Erbil in the Kurdistan Region of Iraq. Iraqi Kurdistan is a political subdivision of the Republic of Iraq.  Upon information and belief, Iraqi Kurdistan is represented in this action by the Ministry of Natural Resources of the

2

Kurdistan Regional Government of Iraq (the "KRG").[1]  The Plaintiff is informed and believes and therefore alleges that none of the officials of Iraqi Kurdistan is now within this District and that Iraqi Kurdistan does not maintain an office within this District; but that there are now or will be during the pendency of this action certain goods, within this District, to wit: the Cargo in which Iraqi Kurdistan may purport to claim some interest.  Iraqi Kurdistan can be served by sending a copy of the summons and complaint and a notice of suit to be addressed and dispatched by the clerk of the Court to the Minister of Foreign Affairs of the Republic of Iraq.

6. **_Defendant in personam: John Doe Buyer._**  Iraqi Kurdistan through its representative the KRG has not explicitly confirmed or denied whether it purports to currently hold an ownership interest in the Cargo.  On information and belief, the KRG purported to transfer title to the Cargo to currently unidentified John Doe Buyer.  The true name and capacity of John Doe Buyer are unknown to Plaintiff at this time.  Upon information and belief, John Doe Buyer contracted to purchase the Cargo and either has or will imminently take possession of the Cargo.  Discovery is likely to reveal the identity of John Doe Buyer and good faith investigative efforts to identify the buyer are ongoing.[2]  As soon as Plaintiff determines the identity of John Doe Buyer, Plaintiff will substitute that individual or entity in as the proper defendant in this action.

---

[1] The Ministry of Natural Resources of the Kurdistan Regional Government of Iraq entered a restricted appearance under Supplemental Rule E(8) to file its Motion to Vacate.  (Dkt. 8.)

[2] Plaintiff respectfully requests leave to conduct immediate and limited discovery to determine the true identity of John Doe Buyer.  Specifically, Plaintiff seeks to serve Defendant Iraqi Kurdistan with a request for documents that identify John Doe Buyer's true name, place of organization or incorporation, and principal place of business.  Good cause exists to allow Plaintiff to conduct this limited discovery in advance of a Rule 26(f) conference.  _See, e.g._ _LaFace Records, LLC v. Does 1-5,_ No. 2:07-cv-187, 2008 WL 513508, *1 (Feb. 22, 2008) (granting plaintiff's application for leave to take immediate discovery under Federal Rules of Civil Procedure 26 and 45 in order to identify five unknown defendants).

### III.  JURISDICTION AND VENUE

7.      This is an action within this Court's admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1).  Some of the acts and conduct alleged herein occurred on and took effect on navigable waters, are connected to traditional maritime activity, and have had and will continue to have a disruptive impact on maritime commerce.

8.      This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1330(a) because Iraqi Kurdistan is a political subdivision of a foreign state as defined in 28 U.S.C. § 1603, and Defendant Iraqi Kurdistan is not entitled to immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1601, *et seq.*  Iraqi Kurdistan is not immune from suit under 28 U.S.C. § 1605(a)(2) because the action against is based on (a) commercial activity carried on in the United States by or on behalf of Iraqi Kurdistan, and/or (b) acts by or on behalf of Iraqi Kurdistan outside the territory of the United States in connection with a commercial activity of Iraqi Kurdistan elsewhere that caused a direct effect in the United States.  This Court has subject matter jurisdiction over the claims against John Doe Buyer pursuant to 28 U.S.C. § 1333, 28 U.S.C. § 1332(a)(4) or alternatively under 28 U.S.C. § 1367(a).

9.      Venue is proper in this Court because the Cargo is or soon will be in this District and under 28 U.S.C. § 1391(b) and (f) with respect to the *in personam* claims.

### IV.  FACTUAL BACKGROUND

**A.      The Cargo at Issue is the Property of the People of the Republic of Iraq.**

10.      The Cargo at issue in this suit is comprised of 1,032,212 net barrels of crude oil aboard the UNITED KALAVRVTA.  The net weight of the Cargo is 143,238.909 metric tons, and it is valued at over $100,000,000.

11.      The Cargo in this suit was produced from wells drilled in Kurdistan, a region within the Republic of Iraq.  Pursuant to Article 111 of the Constitution of the Republic of Iraq,

4

the people of the Republic of Iraq have legal title to oil produced within the Republic of Iraq. (Ex. A, Iraqi Constitution.)  The United States recognizes the Government of the Republic of Iraq, established by the aforementioned Constitution, as the sole legitimate government of the entire territory of the Republic of Iraq.  The Cargo belongs to the people of the Republic of Iraq in all the regions and governorates.

      **B.**      **The Loading of the Cargo is Governed by a Contract Between the Republic of Iraq and the Republic of Turkey, a Third Party.**

12.      In December of 2013, the crude oil which comprises the Cargo was pumped through a pipeline originating in Iraq and running to Ceyhan in Turkey, known as the "Iraq-Turkey Pipeline" or "ITP."

13.      The ITP is a pipeline that runs from Kirkuk to Ceyhan, constructed and operated pursuant to the Crude Oil Pipeline Agreement dated August 27, 1973 between the Republic of Turkey and the Republic of Iraq, and its subsequent amendments and protocols (the "ITP Agreement").  The Republic of Iraq and the Republic of Turkey are both parties to the ITP Agreement.  Neither Iraqi Kurdistan nor the KRG is a party to the ITP Agreement.

14.      The ITP Agreement is a contract which contains distinct maritime obligations. Specifically, the maritime aspects of the ITP Agreement contemplate marine transportation of oil, providing that:  "[t]he Turkish Side guarantees to load all the Crude Oil coming from Iraq to the tankers that will be instructed by the Iraqi Side without delay and to do the necessary port and customs formalities for the departure of the tankers from the port."  The ITP Agreement provides that crude oil may be loaded on vessels only upon the instruction of the MoO or the MoO's Oil Marketing Company, SOMO.  It provides that the ITP and ITP storage and loading facilities are for the exclusive use of the MoO.

15.     Prior to any oil being loaded on a vessel, MoO discovered that the KRG had pumped oil through the pipeline and that this oil was at the marine terminal in Ceyhan.  Pursuant to the ITP Agreement, MoO raised these facts with the Government of Turkey and its pipeline operator, BOTAS (the Government of Turkey and BOTAS are hereinafter collectively referred to as "Turkey").  Turkey repeatedly represented that Turkey would not allow oil from the ITP to be loaded onto tankers without authorization of the Federal Government of Iraq (which is represented by MoO under the ITP Agreement).  In particular, His Excellency Mr. Taner Yildiz, the Turkish Minister of Energy and Natural Resources, publicly confirmed that Turkey would comply with the ITP Agreement's requirement and would not load the oil from the ITP onto vessels without the authorization of MoO.   (*See* Ex. B, January 2014 Reuters Article, Kurdistan Oil Flow to Turkey Begins, Exports Await Iraqi Consent.)

16.     After giving MoO these assurances and in contravention of the ITP Agreement, Turkey transferred the Cargo to the KRG by loading it on the Vessel designated by the KRG, thereby breaching the ITP Agreement.

**C.      KRG Admits That it Intentionally Induced the Republic of Turkey to Breach its Contract with the Republic of Iraq.**

17.     At the time the Cargo was loaded onto the Vessel, the KRG was aware of the ITP Agreement.  (*See* Ex. C, May 25, 2014 Statement by Kurdistan Regional Government in Response to Federal Ministry of Oil Announcement.)

18.     Nonetheless, the KRG acting on behalf of Iraqi Kurdistan instructed Turkey to load the Cargo onto the Vessel on navigable waters in contravention of the ITP Agreement.  The KRG has admitted before this Court that it intentionally interfered with the ITP Agreement, stating that:

> Well, the facts are that the Turks obeyed the instructions of my client and not the instructions of the Ministry of Oil. We were

> clearly -- to get them to do that, we were clearly exercising
> dominion and control over that oil.

(*See* Ex.  D, Official Transcript at 28:22-29:1.)

The KRG has further admitted:

> We know, when we gave direction to the Turks to load it on the
> ship, that they followed our instructions. We know that the
> Ministry of Oil told the Turks, 'Don't obey the instructions of the
> KRG. Obey us,' and the Turks said, 'No. We're going to obey the
> KRG.'

*Id.* at 46:20-24.

19.     Through means currently unknown to MoO, the KRG induced Turkey to breach

the ITP Agreement unjustifiably and to breach their subsequent representations to MoO by

following the KRG's instructions and not the MoO's instructions and by loading the Cargo onto

the UNITED KALAVRVTA in the navigable waters off of Ceyhan, Turkey.  As a result, the

Republic of Turkey failed to perform its maritime duties and obligations under the ITP, namely

the contractual duty to load cargo onto seagoing vessels on navigable waters at the sole direction

of MoO.

20.     On June 23, 2014, the Vessel left Ceyhan with the Cargo.  On the same day, the

KRG caused a bill of lading to be issued in which the Cargo was "to be delivered . . . unto order"

of the KRG.  (Ex. E, Bill of Lading.)

21.     Iraqi Kurdistan and the KRG are not the owners of the Cargo nor do either have

any title to the Cargo.  However, the KRG has neither confirmed nor denied whether it currently

purports to hold an ownership interest in the Cargo.  When this Court questioned the parties as to

whether the KRG owns the Cargo, the KRG stated merely "they [referring to the MoO] don't

own it either."  (*See* Ex. D, Official Transcript Excerpt at 17.)  Perplexingly, counsel for the

KRG also argued that the MoO was "holding up *our* property" and "tying up *my client's*

property." *Id.* at 48-49 (emphasis added).  These statements suggest that, upon information and belief, purported transfers of title to the Cargo have occurred on navigable waters as the Vessel was in transit.

22.     Upon information and belief, John Doe Buyer has contracted to purchase the Cargo and has or will imminently purport to take title while the Cargo is within the State of Texas.

23.     The KRG's act of loading the Cargo onto the Vessel for subsequent sale in the United States constitutes tortious and commercial activity, and the KRG's tortious and commercial activity is occurring, and/or has a direct effect, in the United States.

**D.     MoO Has Suffered Damage as a Result of Iraqi Kurdistan's Interference and John Doe Buyer's Actions.**

24.     As a direct and proximate result of the KRG's and John Doe Buyer's actions, the MoO has been unable to store, process, refine, market, sell or use the Cargo for the benefit of the people of the Republic of Iraq.  Any further sale or resale of the Cargo by the KRG or John Doe Buyer will irreversibly extinguish the MoO's ability to exercise any meaningful ownership rights over its property.

25.     After several changed destinations, the UNITED KALAVRVTA is currently in the United States Gulf of Mexico.  Upon information and belief, the Cargo has been or soon will be loaded onto smaller lightering vessels and brought within this District for sale and/or delivery, the occurrence of which will be detrimental to Plaintiff's ability to re-possess it for later sale for the benefit of the people of the Republic of Iraq.

**E.     The Parties' Ownership Interest in the Cargo is the Subject of Currently Pending Foreign Proceedings.**

26.     The determination of the ownership of the Cargo aboard the Vessel requires resolution of important issues of interpretation of the Iraqi Constitution and Iraqi law.  These

issues should properly be decided by competent courts in Iraq.  With this objective, the MoO has initiated legal actions in Iraqi courts seeking to obtain definitive rulings on these points, seeking to resolve the dispute through the legal process established in the Iraqi Constitution, which was approved by the people of the Kurdistan Region.  The KRG has deliberately thwarted the efforts of the MoO to have the Iraqi courts resolve these issues by refusing to respond to summonses in these legal actions.

27.     The United States and its allies have invested substantial resources in helping the people of Iraq implement a Constitutional, rule-of-law government and develop a law-based system for resolving disputes.  While the Federal Government of Iraq has the police power to enforce the laws of Iraq in Kurdistan, the Federal Government's policy is to avoid the use of forcible means and to resolve disputes through proceedings before competent courts.  The KRG's refusal to participate in these legal proceedings flies in the face of the Federal Government's policies that favor peaceful and legal means of resolving disputes such as the present case.

28.     On July 31, 2012, the MoO initiated a legal action against the KRG in the Federal Supreme Court of Iraq (the "Federal Supreme Court") in respect of the Iraqi constitutional and legal issues relating to the unauthorized export of oil by the KRG.[3]  These exports include the crude Cargo aboard the UNITED KALAVRVTA.  The Federal Supreme Court is the highest court in Iraq and is responsible, *inter alia*, for interpreting provisions of the Iraqi Constitution, deciding on the constitutionality of Iraqi laws and settling disputes that arise between the Federal

---

[3] It is important to distinguish between the issues of ultimate ownership of the oil and the right to export it, which rests solely with the Federal Government, and the issues of licensing, development, management and production, where there are areas of shared competency between the federal and regional authorities.  The latter issues are not implicated in the present dispute.

Government and the governments of the governorates and regions of Iraq, such as the KRG (Ex. A, Iraqi Constitution Excerpts, Article 93).

29.   In the Federal Supreme Court legal action, the MoO alleges, *inter alia*, that the KRG was exporting crude oil in violation of several provisions of the Federal Constitution and Federal Law 101 of 1976 on the Organization of the Ministry of Oil.  (Ex. F, Request by the MoO against the KRG in Federal Supreme Court, July 31, 2012 (Arabic original and English translation.)).   The Federal Supreme Court was requested, *inter alia*, to order the KRG to implement and apply these provisions of the Constitution and the relevant laws by ceasing its illegal crude oil exports.

30.   Since the commencement of this legal action, the KRG has failed to accept service of process and to respond to summonses to appear and present its case to the Federal Supreme Court.  (*See* Ex. G, Letter dated April 10, 2013, from Farouk Mohamed Sami, President of the Federal Supreme Court, to the Council of Ministers of Kurdistan.)   There is no procedural mechanism to obtain a default judgment in a case before the Federal Supreme Court, and thus the KRG's failure to comply with the summonses has effectively blocked the Federal Supreme Court from hearing the merits of the case.

31.   In an effort to stem these illegal exports, on June 5, 2014, the MoO applied to the Federal Supreme Court for a preliminary order to stop the KRG from exporting crude oil while the dispute was pending.  (*See* Ex. H, Request for Injunction by the MoO against KRG filed in Federal Supreme Court, June 5, 2014 (Arabic original and English translation.))   The Federal Supreme Court ruled that it could not issue such a preliminary order, because it would have required an examination of the merits of the case and could give the impression of a preliminary decision on the action, which would be premature and, importantly, the Federal Supreme Court

called on the court administration to complete the service of process as soon as possible to commence the merit hearings.  (*See* Ex. I, Federal Supreme Court Decision, June 24, 2014 (Arabic original and English translation.))

32.     Despite the KRG's failure to respond to the summonses of the Federal Supreme Court, the KRG did not hesitate to issue a misleading press release relating to the Federal Supreme Court's decision on the preliminary order.   On June 27, 2014 (a Friday, which is a weekend day in Iraq), the KRG published a statement on its website claiming that the Federal Supreme Court had issued a ruling on the merits against a request by the MoO to prevent KRG oil exports.  (*See* Ex. J, KRG press release dated June 27, 2014.)   On June 29, 2014, the MoO issued a statement correcting the KRG's misleading press release and explaining that the June 24, 2014 decision related only to a request for a preliminary order and did not address the merits of the case.  (*See* Ex. K, MoO Statement dated June 29, 2014.)

33.     Criminal proceedings against the KRG have also been commenced in Iraq.  On May 27, 2014, after the KRG announced in a press release its first sale of Iraqi crude oil produced in Kurdistan (a statement that, like many issued by the KRG, was inaccurate), the MoO filed a criminal complaint before the Judge of the Investigation Court in New Baghdad against the KRG and all involved persons, alleging the theft of revenues owed to the people of Iraq from the sale of the crude oil.  The MoO based its claim on the violation of the Constitution and Law 101, among others (*See* Ex. L, Request to the Investigating Judge in New Baghdad, May 27, 2014 (Arabic original and English translation.))  These proceedings are ongoing.

34.     The proceedings in this Court are in support of the proceedings in the Courts of Iraq.

## V.  CAUSES OF ACTION

**A.**  ***IN PERSONAM*** **ACTION AGAINST IRAQI KURDISTAN FOR VIOLATION OF IRAQI FEDERAL LAW.**

35.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

36.     Iraqi Kurdistan has violated the laws of the Republic of Iraq, including but not limited to the Constitution of the Republic of Iraq, by unlawfully exporting the Cargo from Iraq without the consent or authorization of the MoO.

37.     Iraqi Kurdistan is not immune from this *in personam* claim under the Foreign Sovereign Immunities Act because the KRG's unlawful export falls within the exception of 28 U.S.C. § 1605 (a)(2).   Specifically, the KRG's unlawful export for subsequent sale in and delivery to the United States constitutes commercial activity which has a direct effect in the United States.

38.     The MoO reserves the right to amend this allegation and/or file additional papers in support thereof, if and as necessary, in accordance with the Federal Rules of Civil Procedure.

**B.**     **STATE LAW APPLICATION FOR WRIT OF SEQUESTRATION OF CARGO.**

39.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

40.     This is a suit for title and possession of personal property, to wit: the Cargo comprised of 1,032,212 net barrels of crude oil aboard or formerly aboard the UNITED KALAVRVTA, weighing 143,238.909 metric tons, and valued at over $100,000,000.

41.     The Cargo is currently aboard the UNITED KALAVRVTA, located approximately 60 miles off the shore of Galveston in the United States Gulf of Mexico.

42.     A reasonable conclusion may be drawn that there is immediate danger that Defendant Iraqi Kurdistan, John Doe Buyer and/or the party in possession of the Cargo will conceal, dispose of, ill-treat, waste, or destroy the property or remove it from the district during the suit.

43.     Final judgment has not been reached in this action.

44.     Plaintiff requests that it be declared the owner of the Cargo and that title be awarded to Plaintiff accordingly. Plaintiff further requests that the Court issue a Writ of Sequestration pursuant to Federal Rule of Civil Procedure 64, Texas Rule of Civil Procedure 696, and Texas Civil Practice & Remedies Code § 62.001 to seize the property during the pendency of this suit.

### C.     ADMIRALTY RULE B *IN PERSONAM* ACTION AGAINST IRAQI KURDISTAN FOR ATTACHMENT BASED ON MARITIME TORT OF TORTIOUS INTERFERENCE WITH CONTRACT.

45.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges in the alternative:

46.     The MoO and third party the Republic of Turkey are parties to the ITP Agreement, which requires loading of cargo onto vessels on navigable waters at the Ceyhan terminal on the Mediterranean shore.

47.     At the time the Cargo was loaded onto the Vessel, the KRG was aware of the ITP Agreement, but nonetheless convinced, instructed or otherwise without justification induced Turkey to load the Cargo onto the Vessel on navigable waters to the order of the KRG in contravention of the ITP Agreement.  The KRG has admitted before this Court that it intentionally ordered the loading despite its awareness of the ITP Agreement.

48.     The KRG on behalf of Iraqi Kurdistan currently maintains possession and control of the Cargo, and the Cargo would be subject to this Court's writ of attachment.

49. Plaintiff seeks attachment of the Cargo as security for its maritime tortious interference claim against Iraqi Kurdistan.

50. Plaintiff avers on information and belief that Defendant Iraqi Kurdistan cannot be found within the District, within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

**D. IN THE ALTERNATIVE, ADMIRALTY RULE B *IN PERSONAM* ACTION AGAINST JOHN DOE BUYER FOR ATTACHMENT BASED ON MARITIME TORT OF CONVERSION.**

51. Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges in the alternative:

52. Upon information and belief, purported transfers of title to the Cargo have occurred on navigable waters as the Vessel was in transit.

53. Most recently, upon information and belief, John Doe Buyer contracted to purchase the Cargo and has or will imminently take possession of the Cargo on navigable waters.

54. The MoO owns and had legal possession of the Cargo on behalf of the Government of the Republic of Iraq and was and is entitled to possession of the Cargo.

55. Any assumption and exercise of dominion and control by John Doe Buyer over the Cargo by purporting to claim title to the Cargo would be unlawful and without authorization.

56. John Doe Buyer's exercise of any such dominion and control over the Cargo is inconsistent with the MoO's rights as an owner. Specifically, as a result of John Doe Buyer's exercise of dominion and control over the Cargo, the MoO has been unable to store, process, refine, market, sell or use the Cargo for the benefit of the people of the Republic of Iraq.

57. Plaintiff seeks attachment of the Cargo up to $100,000,000, as security for its maritime conversion claim against John Doe Buyer.

58.     Plaintiff avers on information and belief that John Doe Buyer cannot be found within the District, within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

59.     To the extent that John Doe Buyer purports to be the owner of the Cargo, the Cargo is subject to this Court's writ of attachment.

**E.     ADMIRALTY RULE C ACTION *IN REM* TO ENFORCE A MARITIME LIEN.**

60.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

61.     This is an action to enforce a maritime lien based on the maritime torts of conversion and tortious interference.  Admiralty courts have clear jurisdiction over suits *in rem* for the maritime tort of tortious interference.  A suit *in rem* for a maritime tort gives rise to a maritime lien.

**F.     ADMIRALTY RULE D ACTION FOR POSSESSION AND TO TRY TITLE OF CARGO.**

62.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

63.     Plaintiff has legal title or a legal claim to the Cargo aboard the UNITED KALAVRVTA.  Plaintiff has been wrongfully deprived of the Cargo.

64.     Plaintiff having set forth facts sufficient to warrant possession of the property comprising the *in rem* defendant pursuant to Rule D of the Supplemental Rules of Admiralty or Maritime Claims seeks a grant of possession of same with all ancillary relief prayed for herein.

**G.      STATE LAW CLAIM FOR CONVERSION AGAINST JOHN DOE BUYER.**

65.     Plaintiff repeats and reiterates each and every allegation as if specifically set forth herein at length and alleges:

66.     The MoO owns and had legal possession of the Cargo on behalf of the Government of the Republic of Iraq and was and is entitled to possession of the Cargo.

67.     Any assumption and exercise of dominion and control by John Doe Buyer over the Cargo by purporting to claim title to the Cargo within the territorial jurisdiction of the State of Texas, would be unlawful and without authorization.

68.     John Doe Buyer's exercise of any such dominion and control over the Cargo is inconsistent with the MoO's rights as an owner.  Specifically, as a result of John Doe Buyer's exercise of dominion and control over the Cargo, the MoO has been unable to store, process, refine, market, sell or use the Cargo for the benefit of the people of the Republic of Iraq.

## VI.  NOTICE PURSUANT TO FED. R. CIV. P. 44.1

69.     Pursuant to Fed. R. Civ. P. 44.1, Plaintiff gives notice that it intends to raise an issue about a foreign country's laws.

## VII.  PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays:

a)   That the MoO be declared the owner of the Cargo and that title be awarded to the MoO;

b)   That a judgment be entered awarding Plaintiff as its *in rem* relief the permanent and unrestricted possession of the Cargo as defined and enumerated herein;

16

c) That the Court order, adjudge and decree that Plaintiff have a decree against Iraqi Kurdistan and John Doe Buyer for the claims asserted by Plaintiff herein, together with interest and costs;

d) Until such final judgment of possession is entered, Plaintiff prays that, (i) that the Court order process to attach to the Cargo; (ii) pursuant to the Supplemental Rules of Admiralty or Maritime Claims, the Cargo or any portion of the Cargo that may come into the District by lighter, be held in arrest and that the United States Marshal may take such actions as are necessary so as to promptly, peacefully and securely repossess the Cargo pending final judgment in the foreign proceedings; and (iii) in the alternative, that the Court issue a Writ of Sequestration pursuant to Federal Rule of Civil Procedure 64, Texas Rule of Civil Procedure 696, and Texas Civil Practice & Remedies Code § 62.001 to seize the Cargo during the pendency of this lawsuit;

e) That a copy of the Amended Complaint, Order and Warrant for Arrest be served upon any lightering vessel that removes the Cargo from the UNITED KALAVRVTA and brings it within this District;

f) That, after arrest, the Court permit Plaintiff to move the Cargo, at cost to the Plaintiff and under the supervision of the United States Marshal, to a storage facility in order to allow for the safekeeping of the Cargo but to allow for the free movement of the Vessel;

g) That all persons claiming any interest in the Cargo may be cited to appear and answer the matters aforesaid;

h)  That this Court retain jurisdiction over the matter for any further or supplemental proceedings as may be necessary, including but not limited to the recognition and enforcement of any award entered against the defendant in the Iraqi proceedings; and

i)  The Court award Plaintiff such other and further relief that this Court deems just and proper.

Dated September 4, 2014.                     Respectfully submitted,

                                             **VINSON & ELKINS LLP**


                                             _____
                                             PHILLIP B. DYE, JR.
                                             Attorney-in-Charge
                                             Federal ID No. 7216
                                             State Bar No. 06311500
                                             **James L. Loftis**
                                             Federal ID No. 29739
                                             State Bar No. 12491210
                                             **John J. Michael**
                                             Federal ID No. 36495
                                             State Bar No. 24041480
                                             Telephone: 713-758-2048
                                             Facsimile:  713-615-5766
                                             1001 Fannin Street
                                             Suite 2500
                                             Houston, Texas 77002
                                             pdye@velaw.com;  jmichael@velaw.com;
                                             jloftis@velaw.com

                                             **Liane Noble**
                                             Federal ID No. 2329197
                                             State Bar No. 24079059
                                             2801 Via Fortuna, Suite 100
                                             Austin, Texas 78746-7568
                                             Telephone:  512-542-8505
                                             Facsimile:  512-236-3234
                                             lnoble@velaw.com


                                             **CLEARY GOTTLIEB STEEN &
                                             HAMILTON  LLP**

                                             **Boaz S. Morag**
                                             S.D. Tex. Bar No. 18019
                                             One Liberty Plaza
                                             New York, New York 10006
                                             Telephone: (212) 225-2894
                                             Facsimile: (212) 225-3999
                                             bmorag@cgsh.com

**Andrew A. Bernstein**
*\*Pro Hac Vice* Application Forthcoming
12, rue de Tilsitt
75008 Paris, France
Telephone: +33 1 40 74 68 00
Facsimile: +33 1 40 74 68 88
abernstein@cgsh.com

**ATTORNEYS FOR PLAINTIFF
MINISTRY OF OIL OF THE
REPUBLIC OF IRAQ**