# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| MINISTRY OF OIL OF THE REPUBLIC OF IRAQ, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | CIVIL ACTION G-14-249 |
| 1,032,212 BARRELS OF CRUDE OIL, THE KURDISTAN REGION OF IRAQ, AND JOHN DOE BUYER, | § § § § | |
| *Defendants*. | § § | |

**PLAINTIFF MINISTRY OF OIL OF THE REPUBLIC OF IRAQ'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B) AND FOR A STAY PENDING APPEAL**

Plaintiff the Ministry of Oil of the Republic of Iraq ("MoO") files this Memorandum of Law in Response to the Kurdistan Region of Iraq's ("KRG") Motion for Certification Under 28 U.S.C. § 1292(b) and for Stay Pending Appeal (Dkt. 59, "the Motion").  In its Motion, KRG rehashes the same arguments put forth in its Motion to Dismiss (Dkt. 44-1), which in turn were largely the same arguments put forth in its Response to Plaintiff's Motion for Leave to Amend (Dkt. 33).  Because KRG has failed to show any "exceptional" reason for an interlocutory appeal, its request for certification under 28 U.S.C. § 1292(b) should be denied.  Furthermore, because KRG has failed to demonstrate any equitable basis for granting a stay (to the contrary, the equities clearly weigh against a stay), MoO requests that the Court reject or limit KRG's request for a stay.

## Table of Contents

I.      STATEMENT OF THE NATURE OF THE PROCEEDING ...........................................1

II.     STATEMENT OF THE ISSUES TO BE RULED UPON AND STANDARD OF
        REVIEW ........................................................................................................................2

        A.      Interlocutory appeal should only be granted in exceptional circumstances. ..........2

        B.      Stay pending appeal is not a matter of right. ........................................................2

III.    SHORT SUMMARY OF THE ARGUMENT ...................................................................3

IV.     KRG'S PENDING FSIA APPEAL DOES NOT EXEMPT KRG FROM THE
        REQUIREMENTS OF SECTION 1292(B). ....................................................................3

V.      THE AUTHORITY GOVERNING THIS CASE DOES NOT CREATE
        SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION NECESSARY
        TO WARRANT AN INTERLOCUTORY APPEAL...........................................................5

        A.      There is no question that a United States Court can interpret a foreign
                constitution without running afoul of the political question doctrine.....................6

        B.      There is no ground for difference of opinion regarding the inapplicability
                of the act of state doctrine in this case. ................................................................8

        C.      There is no substantial ground for difference of opinion regarding this
                Court's ruling that MoO has stated a plausible claim for relief.............................9

VI.     KRG DOES NOT SATISFY ITS BURDEN OF ESTABLISHING THAT
        INTERLOCUTORY APPEAL WILL ADVANCE THE LITIGATION.........................11

VII.    THE COURT SHOULD REJECT OR LIMIT KRG'S REQUEST FOR A STAY..........12

        A.      An unconditional stay in this case would only contribute to KRG's
                repeated attempts to avoid adjudication of the central issue of ownership............12

        B.      KRG cannot meet its burden of establishing its entitlement to an
                unconditional stay. ...............................................................................................14

VIII.   CONCLUSION................................................................................................................18

## Table of Authorities

### Cases

*Abecassis v. Wyatt*,
  No. H-09-3884, 2014 WL 5483724 (S.D. Tex. Oct. 29, 2014) ............................................ 2, 5

*Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) .................................................................................... 2

*Apostol v. Gallion*,
  870 F.2d 1335 (7th Cir. 1989) (5th Cir. 1991) ...................................................... 18

*Baker v. Carr*,
  369 U.S. 186 (1962)................................................................................................ 6, 8

*Clark-Dietz & Associates-Engineers, Inc. v. Basic Constr. Co.*,
  702 F.2d 67 (5th Cir. 1983) ................................................................................... 2

*Coates v. Brazoria Cty. Tex.*,
  919 F. Supp. 2d 863 (S.D. Tex. 2013) .............................................................. 5, 11

*Coopers & Lybrand v. Livesay*,
  437 U.S. 463 (1978).................................................................................................. 2

*Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*,
  834 F.Supp. 167 (E.D.Va. 1993) ............................................................................. 4

*Harris v. Kellogg, Brown & Root Services, Inc.*,
  No. 08–563, 2009 WL 1248060 (W.D. Pa. Apr. 30, 2009)................................... 8

*Hilton v. Braunskill*,
  481 U.S. 770 (1987)................................................................................................. 3

*Hunt v. Mobil Oil Corp.*,
  410 F.Supp. 10 (S.D.N.Y. 1976) ............................................................................ 9

*In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the
  Labor Court of Brazil*,
  466 F. Supp. 2d 1020 (N.D. Ill. 2006) .................................................................... 7

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
  970 F. Supp. 2d 524 (E.D. La. 2013).................................................................... 7

*Japan Whaling*,
  478 U.S. at 230 .......................................................................................................... 6

*Kerr v. Hickenlooper*,
  No. 11–cv–01350–WJM–BNB, 2012 WL 4359076 (D. Colo. Sept. 21, 2012) ....... 7

*Kirkham v. Societe Air France*,
  429 F.3d 288 (D.C. Cir. 2005) ................................................................................ 15

*Lane v. Halliburton*,
  529 F.3d 548 (5th Cir. 2008) ................................................................................ 6

*Lizarbe v. Rondon*,
  No. PJM 07–1809, 2009 WL 2487083 (D. Md. Aug. 12, 2009) ................................ 9

*Moore v. Tangipahoa Parish Sch. Bd.*,
  507 F. App'x 389 (5th Cir. 2013) ...................................................................... 3, 14

*Nken v. Holder*,
  556 U.S. 418 (2009).......................................................................................... 2, 14

*Pemex Exploracion y Produccion v. BASF Corp.*,
  No. CIV.A. H-10-1997, 2011 WL 9523407 (S.D. Tex. Oct. 20, 2011) ................... 7

*Republic of Iraq v. ABB AG*,
  920 F. Supp. 2d 517 (S.D.N.Y. 2013) .................................................................. 9

*Ruiz v. Estelle*,
  650 F.2d 555 (5th Cir. 1981) .............................................................................. 14

*Ryan v. Flowserve Corp.*,
  444 F. Supp. 2d 718 (N.D. Tex. 2006) ................................................................ 7

*United States v. Edward Rose & Sons*,
  384 F.3d 258 (6th Cir. 2004) .............................................................................. 17

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
  559 F.2d 841(D.C. Cir. 1977) ............................................................................. 17

## Statutes

28 U.S.C. § 1292(b) ....................................................................................... passim

28 U.S.C. § 1605(a)(2) .......................................................................................... 15

## Rules

Fed. R. Civ. Proc. 12(b)(6) ..................................................................................... 6

## Other Authorities

4 Am. Jur. 2D Appellate Review § 128 ..................................................................... 5

Matthew Phillips, *A Mysterious Oil Tanker Might Hold the Key to Kurdish Independence*,
  Bloomberg Businessweek, Oct. 23, 2014,
  http://www.businessweek.com/articles/2014-10-23/iraqi-kurds-seek-independence-
  through-shady-oil-sales ................................................................................ 15, 17

iv

# I.      STATEMENT OF THE NATURE OF THE PROCEEDING

The factual background of this case has been recounted in previous orders.  Dkt. 25 at 2-4, Dkt. 57 at 1-2.  In short, the case involves a dispute between MoO and KRG as to the ownership of a cargo of more than one million barrels of crude oil (the "Cargo").  MoO sued for possession of the Cargo, and KRG filed a motion to dismiss arguing lack of jurisdiction under the political question doctrine, the Foreign Sovereign Immunities Act, and federal admiralty law.  Dkt. 44-1.  KRG also sought dismissal under the act of state doctrine and for failure to state a claim. By Order dated January 7, 2015 (the "Order"), this Court held that it had jurisdiction over the matter and that MoO had stated a claim for relief, permitting MoO to pursue its claims to the Cargo and to seek sequestration under Texas law.  Dkt. 57.

On January 20, 2015, KRG filed an interlocutory appeal of the Court's ruling on FSIA immunity, under the collateral order doctrine.  On the same day, KRG filed this request for certification of an interlocutory appeal of the Order, seeking immediate review of the "other . . . issues decided against the KRG—i.e., the political question doctrine, the act of state doctrine, and failure to state a claim." Dkt. 59 at 3.  KRG further requested a stay during the pendency of its appeal.  *Id*. at 4.

Also on January 20, 2015, KRG informed the Court via letter that "just as the KRG continues to export oil to markets around the world, the KRG will soon dispatch additional shipments of oil to the United States."  Dkt. 61-2.[1]

---

[1]      KRG disclosed this critical factual development in an un-docketed letter sent via e-mail.  MoO has since added the letter to the record of this case, as an exhibit to its Response in Opposition to Defendant's Letter Motion for Expedited Resolution.  Dkt. 61.  MoO objects to KRG's use of letter correspondence to address substantive issues in violation of this Court's rules against advancing substantive arguments via letter (Hon. Gray Miller Procedures, Sec. 1(D)(2)).

## II.   STATEMENT OF THE ISSUES TO BE RULED UPON AND STANDARD OF REVIEW

The issues to be ruled upon are (1) whether KRG has met its burden to establish its entitlement to certification of interlocutory appeal, and (2) whether this action should be stayed pending appeal.  The standards for review are as follows:

### A.   Interlocutory appeal should only be granted in exceptional circumstances.

Interlocutory appeals before final judgment are permitted where (1) a trial court's decision involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  "Unless *all* these criteria are satisfied, the district court may not and should not certify its order . . . for an immediate appeal under section 1292(b)."  *Abecassis v. Wyatt*, No. H-09-3884, 2014 WL 5483724, at *2 (S.D. Tex. Oct. 29, 2014) (J. Miller) (quoting *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (emphasis in original)).  The Fifth Circuit instructs that such interlocutory appeals should only be granted in "exceptional" circumstances.  *Clark-Dietz & Associates-Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983).  The party seeking an interlocutory appeal bears the burden of demonstrating the necessity of an interlocutory appeal. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

### B.   Stay pending appeal is not a matter of right.

"[A] stay is not a matter of right, even if irreparable injury might otherwise result."  *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).  Instead, "[t]he propriety of its issue is dependent upon the circumstances of the particular case, [and] . . . [t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Id.*  Specifically, the moving party must satisfy the following four factors:  "'(1) whether the stay applicant has made

2

a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389, 392 (5th Cir. 2013) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

## III.    SHORT SUMMARY OF THE ARGUMENT

KRG is not entitled to certification under Section 1292(b) because (1) KRG's pending FSIA appeal does not constitute an "exceptional" circumstance to warrant immediate appeal of the Court's other rulings, (2) there is no substantial ground for difference of opinion over any question of law at issue in this case, and (3) KRG has not established that appeal will serve any purpose other than to prolong and postpone resolution of this case.

KRG is not entitled to a stay of the proceedings.  The propriety of KRG's request for a stay depends on its ability to demonstrate that entry of a stay would lead to an equitable result, which KRG cannot do because a stay would be inequitable.   MoO therefore requests that the Court deny KRG's request for a stay or, in the alternative, that any stay be conditioned upon (1) the stay not impeding MoO's right to seek a writ of sequestration from this Court if KRG attempts to discharge the Cargo that is the subject of this action, and (2) KRG's agreeing to give MoO ten days' notice of any further attempted sales or deliveries of oil in the United States.

## IV.    KRG'S PENDING FSIA APPEAL DOES NOT EXEMPT KRG FROM THE REQUIREMENTS OF SECTION 1292(B).

In an attempt to circumvent the requirements for appeal under Section 1292(b), KRG claims that the pendency of its FSIA appeal favors certification.  As stated, KRG has already filed an interlocutory appeal of the Court's ruling on FSIA immunity, under the collateral order doctrine.  It now asks this Court for leave to appeal the "other . . . issues decided against the

3

KRG—i.e., the political question doctrine, the act of state doctrine, and failure to state a claim" in advancement of what KRG contends are "the interest of judicial economy and the goal of avoiding piecemeal litigation and multiple appeals." Dkt. 59 at 9.

Contrary to KRG's position, the FSIA appeal does not exempt KRG from the requirements of Section 1292(b). The only other court that has faced identical procedural circumstances has denied interlocutory certification. *Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 834 F.Supp. 167 (E.D.Va. 1993). In that case, the Republic of Fiji and Eckert entered into a government and public relations consulting services contract. *Id.* at 169. When a new government took power in Fiji, it terminated the contract and refused to pay Eckert, and Eckert sued for breach of contract. *Id.* Fiji responded by moving to dismiss on the basis of sovereign immunity, the act of state doctrine, and the political question doctrine. *Id.* In *Eckert*, as here, the district court held that FSIA's "commercial activity" exception precluded Fiji's immunity defense, and that Fiji's invocation of the political question and act of state doctrines also failed. *Id.* at 170-73. In *Eckert*, as here, Fiji appealed the court's sovereign immunity ruling, relying on the collateral order doctrine. *Id.* at 173-74. As in the case at bar, "Fiji . . . argue[d] that the certification of these issues under 28 U.S.C. § 1292(b) [was] appropriate in order to consolidate the appeal of these issues with the pending immunity appeal." *Id.* at 174. The *Eckert* court flatly rejected this argument, stating:

> *More is required.* Specifically, Fiji must show that there is a "substantial ground for a difference of opinion" concerning Fiji's political question and act of state positions. This is the Achilles heel of Fiji's certification argument. There is no substantial ground for a difference of opinion on these questions. Fiji's arguments are wholly insubstantial and lacking in any direct or analogous case support. Certification of these issues is therefore inappropriate.

*Id.*

4

Applying this reasoning to the Motion before this Court, it is clear that considerations of "judicial economy" do not provide KRG with the shortcut to certification that it seeks.  Despite the pending FSIA appeal, more is required.  KRG must still satisfy *all* of the criteria for appeal under section 1292(b).  *Abecassis,* 2014 WL 5483724, at *2.  As shown below, KRG cannot carry this burden.

## V.   THE AUTHORITY GOVERNING THIS CASE DOES NOT CREATE SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION NECESSARY TO WARRANT AN INTERLOCUTORY APPEAL.

KRG cannot satisfy its burden of showing the existence of substantial ground for difference of opinion over a question of law at issue in this case.  This essential element of Section 1292(b) certification is only satisfied where:

> a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Abecassis*, 2014 WL 5483724, at *2 (citing 4 AM. JUR. 2D Appellate Review § 128).  "The threshold for establishing a 'substantial ground for difference of opinion' is higher than mere disagreement or even the existence of some contrary authority."  *Coates v. Brazoria Cty. Tex.*, 919 F. Supp. 2d 863, 868 (S.D. Tex. 2013) (citation omitted).

Here, KRG has not, and cannot, allege that the Court's challenged rulings are "contrary to the rulings of all Courts of Appeals which have reached the issue," or that there is a circuit split on any points decided in the Order.  *See Abecassis*, 2014 WL 5483724, at *2.  Although the merits of the case will ultimately require interpretation of foreign law, the challenged portions of the Court's Order exclusively involve interpretation of U.S. law, namely the standards governing the political question doctrine, the act of state doctrine, and dismissal for failure to state a claim

under Rule 12(b)(6).  There is no substantial ground for difference of opinion regarding those standards.

### A.     There is no question that a United States Court can interpret a foreign constitution without running afoul of the political question doctrine.

First, there is no substantial ground for difference of opinion regarding the Court's ruling that it has jurisdiction to interpret the foreign law at issue in this case without violating the U.S. Constitution's separation of powers.  The applicable legal standard for the political question doctrine is well-settled within the Fifth Circuit, where courts apply the six factors set forth by the Supreme Court in *Baker* to determine if a case or controversy is non-justiciable.  *Lane v. Halliburton*, 529 F.3d 548, 557-58 (5th Cir. 2008) (citing *Baker v. Carr*, 369 U.S. 186, 217 (1962)).  Applying *Baker*, the Court held as follows:

> The political question doctrine deals with "political questions," not merely "political cases."  *Baker*, 369 U.S. at 217. The MoO's claims seek an interpretation of the text of the Iraqi Constitution and application of that interpretation to the facts of the case to determine if the oil was converted.  This does not involve political questions, but classic judiciary functions. No matter how desirable it may be to avoid deciding a case like this one, a court "cannot shirk this responsibility merely because [its] decision may have significant political overtones." *Japan Whaling*, 478 U.S. at 230. "Viewing the facts in a light most favorable to the [MoO] . . . [the KRG's] conduct can be examined by a federal court without violating the [U.S.] Constitution's separation of powers." *Lane*, 529 F.3d at 560. The KRG's motion to dismiss on the basis of the political question doctrine is denied.

Dkt. 57 at 12.

KRG has not presented any authority to dispute the Court's ruling that textual interpretation of a constitution and "application of that interpretation to the facts of the case" are "classic judiciary functions."  *Id*.  Indeed, interpreting foreign constitutional and legal texts is a

commonplace function for the Judiciary.[2]   The only "difference of opinion" that the KRG presents is its own.  KRG claims that is entitled to interlocutory appeal because "no court . . . has determined who has the right to control the extraction, export, and sale of oil from future fields under the Iraqi Constitution."  Dkt. 59 at 4.  KRG adds that "[t]he dispute here involves competing claims to sovereignty" and "interpretation of a foreign constitution . . .  which reflects a political compromise."  *Id.*  These arguments only demonstrate that KRG disagrees with the Court's *application* of well-established political question jurisprudence.  KRG does not offer any alternative legal authority that was not, but should have been, applied in ruling on the motion to dismiss.  The minimal authority that it did present in its motion to dismiss (Dkt. 44-1) has already been readily distinguished by the Court.  *Cf. Kerr v. Hickenlooper*, No. 11–cv–01350–WJM–BNB, 2012 WL 4359076, at *2-3 (D. Colo. Sept. 21, 2012) (ground for difference of opinion existed for court's ruling that political question doctrine did not apply to Enabling Act claim where court "emphasized . . . how unsettled the law is in that area, and how courts have come out on both sides of the issue").

To the extent KRG objects to the Court's application of these legal standards to the facts pled by MoO, that is not a proper basis for interlocutory appeal. *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006). (Section 1292(b) is "not a vehicle to question the correctness of a district court's ruling or to obtain a second, more favorable opinion.") (citation omitted).  Indeed, the Court should not "certify questions of relatively clear law merely because

---

[2]      *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 970 F. Supp. 2d 524, 529-33 (E.D. La. 2013) (interpreting Article 27 of the Mexican Constitution, in holding that the federal government of Mexico, not the Mexican States, owns the water, property, and natural resources at issue in the case); *Pemex Exploracion y Produccion v. BASF Corp.*, No. CIV.A. H-10-1997, 2011 WL 9523407, at *4-5 (S.D. Tex. Oct. 20, 2011) (interpreting Article 27 of the Mexican Constitution and Article 1 of the Regulatory Statute of Article 27 of the Mexican Federal Constitution Regarding Petroleum); *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1032 (N.D. Ill. 2006) (interpreting Article 5(II) of the Brazilian Constitution to hold that "only an explicit law or ruling can preclude foreign discovery").

the losing party disagrees with the [C]ourt's analysis." *See Harris v. Kellogg, Brown & Root Services, Inc.*, No. 08–563, 2009 WL 1248060, at *2 (W.D. Pa. Apr. 30, 2009) (noting that movant failed to establish "substantial ground" element for interlocutory certification on political question grounds where movant did not dispute that court applied *Baker* factors but merely disagreed with *how* court applied *Baker* factors).

In any event, this Court's holding that the political question doctrine does not bar judicial resolution of this case is plainly correct. The dispositive factor here is that "resolving this dispute consistently with the text of the Iraqi Constitution does not contradict, and appears to support, the daily press briefing statements by the U.S. State Department." Dkt. 57 at 9. As noted in the Order, the Executive Branch "views the dispute as a commercial transaction for which the parties may face legal consequences" and has submitted no statement of any kind to this Court requesting that it demur. *Id.* at 10-11. Under well-settled precedent, and for obvious reasons, no political question exists when the political branch at issue has demonstrated its opinion that the case presents a justiciable question. There is no substantial ground for difference of opinion with regard to the Court's ruling on the political question doctrine.

### B.   There is no ground for difference of opinion regarding the inapplicability of the act of state doctrine in this case.

Second, KRG does not present any authority to establish substantial ground for difference of opinion regarding the Court's ruling on the act of state doctrine. In its Order, the Court correctly stated that it was KRG's burden "to demonstrate that the Kurdistan region is a foreign state for purposes of the act of state doctrine." Dkt. 57 at 20. The Court held that KRG failed to meet that burden because: (1) the various definitions of "foreign state" that were presented to the Court did "not include political subdivisions;" (2) the KRG is governed by Iraq's Constitution; and (3) the U.S.'s position on Kurdistan has been that it supports the "Kurdistan Region within

8

the framework of Iraq's constitution." *Id*. at 21.  The Court also pointed out that "the current government of Iraq itself [] sought out United States courts," a factor that "tilt[s] against the doctrine's application." *Id*. at 22 (citing *Republic of Iraq v. ABB AG*, 920 F. Supp. 2d 517, 534 (S.D.N.Y. 2013)).

In its Motion for certification, KRG does not offer any alternative legal authority that was not, but should have been, applied in ruling on the motion to dismiss, in which the Court easily distinguished the few act of state cases relied upon by KRG in the motion to dismiss.  KRG therefore fails to establish this essential requirement for 1292(b) certification.  *See Hunt v. Mobil Oil Corp*., 410 F.Supp. 10, 20-21 (S.D.N.Y. 1976) (finding no ground for substantial disagreement of inapplicability of act of state doctrine to antitrust claims even though they were based on production contract which was intended to address the "demands of Libya and the other oil producing countries"); *Lizarbe v. Rondon*, No. PJM 07–1809, 2009 WL 2487083, at *3 (D. Md. Aug. 12, 2009) (movant "articulated no basis for substantial disagreement" as to court's previous ruling that violations of customary international law are not "acts of state").  There is no substantial ground for difference of opinion with regard to the Court's ruling on the act of state doctrine.

**C.    There is no substantial ground for difference of opinion regarding this Court's ruling that MoO has stated a plausible claim for relief.**

When addressing KRG's motion to dismiss for failure to state a claim, the Court applied U.S. federal law and Texas State law to hold that MoO plausibly stated a claim for relief.  Dkt. 57 at 23.  KRG presents no challenge to this Court's understanding of the relevant U.S. and Texas authorities.  Applying those standards, the Court held  "[a]t this point, where mere plausibility and not proof is required, the MoO has sufficiently pled that the Iraqi Constitution can be interpreted to give the MoO title to the oil as opposed to the KRG." *Id*.  Even if it were

true, as KRG asserts, that "no court in Iraq, let alone in this country, has addressed" to whom the Iraqi Constitution grants authority over the oil at issue (which if true would be due exclusively to KRG's refusal to appear before the Iraqi Federal Supreme Court, Dkt. 48-1 at 1-2; Compl. ¶ 30, Ex. G.) and that there are "grounds for reasonable dispute on the question," Dkt. 59 at 10, such statements are admissions that MoO's claim is *plausible* – but allegedly not proven.  In other words, KRG does not even challenge the Court's plausibility determination, rather it uses the plausibility determination as a pretext to request immediate appeal of the merits question this Court has expressly not yet addressed: whether MoO proves its interpretation of the Iraqi Constitution.

As regards the merits, it is simply untrue that no court has addressed to whom the Iraqi Constitution grants authority over the oil at issue.  As explained in detail in earlier briefing, the Iraqi Federal Supreme Court itself has already held that the Iraqi Constitution grants MoO exclusive authority over oil exports.  *See* Dkt. 48-1 at 24-29; Dkt. 48-13 at 2-4.  So, although there is in fact no reasonable ground to dispute MoO's exclusive authority over the oil under the Iraqi Constitution, there is no dispute at all – even from KRG – that MoO stated a plausible claim for relief.

In sum, KRG cannot establish substantial ground for difference of opinion with regard to the political question doctrine, the act of state doctrine, or the Court's ruling on KRG's motion to dismiss for failure to state a claim.  Because certification of interlocutory appeals under 28 U.S.C. § 1292(b) requires satisfaction of all three criteria, KRG's failure on this element alone is sufficient ground to deny its Motion.

## VI.   KRG DOES NOT SATISFY ITS BURDEN OF ESTABLISHING THAT INTERLOCUTORY APPEAL WILL ADVANCE THE LITIGATION.

As stated, certification of interlocutory appeals under Section 1292(b) also requires a finding that "an immediate appeal from the order may materially advance the ultimate termination of the litigation."   28 U.S.C. § 1292(b).   In evaluating whether the appeal would materially advance the litigation, "a district court is to examine whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly."  *Coates*, 919 F. Supp. 2d at 867.

In support of this requirement, KRG makes the obvious point that dismissal of MoO's claims upon immediate appeal, as opposed to appeal after judgment, would "speed [things] up." Dkt. 59 at 10.   Of course, dismissal on appeal will always be faster than dismissal after the appellant loses at trial, but KRG has no reason to assume, among other things, that it will win on appeal.  If the hope of a different result were a good reason for interlocutory appeal, such appeals would be the rule rather the exception.   KRG also once again reiterates that "it would be more efficient to certify the Order in its entirety to ensure that other controlling questions of law are considered by the Fifth Circuit alongside the FSIA issue, rather than seriatim."   Dkt. 59 at 11. As discussed in greater detail above, this existence of a pending FSIA appeal does not necessitate certification of all other issues in the same lawsuit.  This is particularly true given that there is no overlap between the legal standards for evaluating the FSIA question and those for evaluating the other questions on which KRG is seeking certification.

For the reasons stated above, KRG has failed to satisfy the criteria for interlocutory appeal.  Because there is not substantial ground for difference of opinion regarding the key legal issues at play and because KRG has not carried its burden of establishing that certification will

11

materially advance the litigation, KRG should not be permitted to rehash the same unsupported theories to avoid adjudication of MoO's claims.

## VII.   THE COURT SHOULD REJECT OR LIMIT KRG'S REQUEST FOR A STAY.

### A.   An unconditional stay in this case would only contribute to KRG's repeated attempts to avoid adjudication of the central issue of ownership.

KRG further requests a stay during the pendency of its appeal.  Dkt. 59 at 4.  Contrary to KRG's assertions, a stay is not "presumptively appropriate" in this or any case.  Dkt. 59 at 12. The propriety of a stay is dependent upon the circumstances presented and, above all, on the movant's establishing that entry of the stay would achieve an equitable result.  KRG does not and cannot establish its equitable entitlement to a stay because there is nothing equitable about the stay KRG currently proposes.

KRG's request for a stay is the latest in a series of attempts to avoid adjudication of the central dispute at issue here: ownership of the Cargo.  KRG thwarted legal proceedings in Iraq on this issue by refusing to appear in court.  It then blocked this Court from exercising the admiralty remedies of arrest and attachment and the Texas state law remedy of sequestration by staying anchored just outside the reach of the United States Marshals.  Then, in KRG's Motion to Dismiss (Dkt. 44-1) and Motion for Certification (Dkt. 59), KRG advanced additional arguments – premised on subject matter jurisdiction – to again avoid judicial review of its illegal actions.  It appears to be KRG's position that no court in the world may adjudicate this matter.  Now, KRG asks the Court to stay proceedings so that it may continue its pattern of avoiding adjudication.

If the Court denies a stay and proceeds to decide the legal questions at issue in this case, the parties will finally have resolution of the question of ownership over the disputed Cargo.  In contrast, staying the proceedings only delays the resolution of the case, a result which is particularly inequitable in light of the KRG's stated intention, during the period when the stay is

in effect, to undertake further unauthorized sales of Iraqi oil in the United States.  Specifically, KRG has stated:

> [J]ust as the KRG continues to export oil to markets around the world, *the KRG will soon dispatch additional shipments of oil to the United States*.  The KRG will also continue to assert . . . its rights to . . . sell oil from the Kurdistan Region.

Dkt. 61-2.  Any such unauthorized deliveries of KRG crude oil to the U.S. market will increase MoO's burdens in monitoring and challenging the additional shipments, and will also result in additional litigation over the very issues to be resolved in proceedings before this Court – which KRG is now asking to be stayed from resolution.  This result is not only unfair to MoO, it is patently at odds with KRG's stated purpose for the stay, namely, avoiding the harm of being forced to litigate in the United States.  Dkt. 59 at 13.  Similarly, should KRG endeavor to bring the disputed Cargo into this District for sale during the pendency of the stay, it will be doing precisely what a judgment (in MoO's favor) would prohibit – all while MoO's hands are tied by the stay.  This is clearly inequitable. The stay should not impede MoO's ability to seek a writ of sequestration should KRG bring the Cargo into the district.

For these reasons, KRG is opposed to an unconditional stay on the proceedings.  Nevertheless, MoO, for its part, is willing to accept a stay if KRG agrees to two conditions necessary to make the stay minimally fair and to ensure it will maintain the status quo:

- First, the stay must not impede MoO's right to seek a writ of sequestration from this Court if KRG attempts to discharge the Cargo.

- Second, to afford MoO the opportunity to respond meaningfully to any additional shipments, KRG must agree to give MoO ten days' notice of any further attempted sales or deliveries of oil in the United States.

Absent such conditions, for the reasons fully set forth below, KRG merits no stay.

### B.      KRG cannot meet its burden of establishing its entitlement to an unconditional stay.

As stated above, the party requesting a stay bears the burden of establishing that the circumstances justify such discretionary relief, *Nken*, 556 U.S. at 433-34., by "satisfy[ing]" the following four factors:  " (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies,"  *Moore*, 507 F. App'x at 392 (quotations omitted).  In evaluating these factors, the Fifth Circuit has held that the movant may succeed without showing a substantial likelihood or "probability" of success if the movant "present[s] a substantial case on the merits when a serious legal question is involved *and* shows that the balance of the equities weighs heavily in favor of granting the stay."  *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981) (emphasis added).  On the other hand "if the balance of equities (i.e. consideration of the other three factors) is not heavily tilted in the movant's favor, the movant must then make a more substantial showing of likelihood of success on the merits."  *Id.* at 565-66.

In this case, KRG fails to present a substantial case on the merits of any serious legal question, let alone a substantial likelihood of success on the merits on appeal.  To begin with, KRG does not attempt to make any showing regarding its FSIA appeal – with good reason.  KRG predicated its alleged immunity on the inapplicability of the commercial activities exception to the FSIA, *see* 28 U.S.C. § 1605(a)(2), based on assertions that KRG's conduct was not commercial and had no direct effects in the United States. Dkt. 44-1 at 15-17.  Specifically, KRG asserted that its conduct concerned only "control over the natural resources in [Kurdistan]," and that any effect in the United States was "indirect and the result of numerous intervening

14

activities." *Id.*  Now, however, KRG candidly admits that it intends to dispatch "additional" shipments of Iraqi oil directly into the United States (admitting by implication that it has already sold Iraqi oil in the United States).[3]  Dkt. 61-2.  In light of KRG's admission that it is carrying on a facially commercial activity directed at the United States, *see, e.g., Kirkham v. Societe Air France*, 429 F.3d 288, 293 (D.C. Cir. 2005) (sales in district, even if through agent, are commercial activity in the United States), KRG cannot present a substantial case that its conduct falls outside of the commercial activities exception.

KRG tries to demonstrate its substantial case regarding other legal questions it wishes to raise on appeal by, at most, citing summarily to unavailing arguments it made before this Court on its motion to dismiss.  In fact, KRG advances no argument as to the substance of its claim that the act of state doctrine applies, nor can it, given that KRG is not a state but a region of a state, Iraq, which itself has invoked the jurisdiction of the United States courts.  Dkt. 57 at 20-23. KRG also presents no substantial case regarding the political question doctrine or the plausibility of MoO's claims for the reasons explained *supra*, Parts V.A & V.C.  As a result, KRG has not, and cannot, present a substantial case about any serious legal question, and for this reason alone KRG is not entitled to a stay.

In addition, KRG fails to establish that the balance of equities weighs in its favor at all, let alone heavily.  In examining the equities, a critical factor is again that KRG has declared that it will use the period of any stay to "dispatch additional shipments of oil to the United States." Dkt. 61-2.  Against this threat, KRG's claim of irreparable harm, *i.e.*, being "subject[ed] to the

---

[3]     KRG continues its practice of obfuscating facts relating to the status of its oil sales and shipments, by referring to the dispatch of "additional" shipments into the United States.  Dkt. 61-2.  As MoO has previously noted, a KRG representative has publicly stated that KRG has delivered crude oil in this District, and KRG has entered into contract with a lightering company and a buyer in this District.  *See* Dkt. 48-1 at 13 & n.19; *id.* Ex. 3, Matthew Phillips, *A Mysterious Oil Tanker Might Hold the Key to Kurdish Independence*, BLOOMBERG BUSINESSWEEK, Oct. 23, 2014, at 3-4, *available at* http://www.businessweek.com/articles/2014-10-23/iraqi-kurds-seek-independence-through-shady-oil-sales ("Bloomberg Art.").

burdens of litigation for claims to which it is immune," (Dkt. 59 at 13) is meaningless.  If KRG brings additional shipments of oil to the United States, MoO will in all likelihood, and wherever able, meet such shipments with new legal actions.  In other words, by engaging in commercial activity that excepts it from protection under FSIA, KRG will invite the very irreparable harm during the pendency of the appeal that it claims an entitlement to avoid – further litigation in United States courts, and potentially before this very Court.

KRG's claim that the present litigation risks irreparable harm to KRG by "effectively enjoining it from selling oil in this country" (Dkt. 59 at 14) rings similarly false.  Putting aside that the relevant question is not what harm will befall KRG if it loses this case, but what harm will accrue during the pendency of the stay, KRG will suffer no harm in any event because it has made clear that it will "continue to export to oil markets around the world," (Dkt. 61-2), as it has been doing on a regular basis for months.[4]  KRG asserts no actual harm, irreparable or otherwise.

Absent the two conditions requested above, the proposed stay has the potential to harm MoO in at least two ways.  First, if this Court grants KRG an unconditional stay and KRG is bold enough to bring the Cargo into this District, KRG may well also assert that MoO is stayed from applying for a writ of sequestration.  However aggressive such conduct might seem, KRG has taken aggressive positions throughout, and MoO should not be forced to bear even the risk that KRG could frustrate its sequestration remedy.  As this Court is aware, KRG has gone to great lengths to avoid providing any information on its disposition of the Cargo (or even whether it has disposed of it), and those efforts are likely to be reinforced if the Cargo is unloaded in the United States.  MoO may literally find itself with no practical remedy against any buyer.

---

[4]     *See* Ex. A, MOL Group, *The Rise of Kurdish Oil: A New Energy Exporter is Born* 5, 7, 11 (2014) (presented at Kurdistan-Iraq Oil & Gas Conference & Exhibition, Dec. 16-18, 2014, London, U.K.)

Second, KRG has demonstrated that it will attempt to avoid hindrance of its oil sales by disguising the movements of its vessels. Specifically, vessels laden with KRG cargoes routinely turn off their transponders, thus preventing traditional vessel monitoring, and also make ship-to-ship transfers during such "dark" periods.[5] If MoO cannot monitor KRG's attempted shipments even with constant vigilance, KRG may be able to use the stay as an opportunity to secretly accomplish sales in the United States without MoO even having the opportunity to contest such sales in Court.  Thus, the proposed stay has the potential not only to permit further attempted sales but also to prevent MoO from meaningfully responding to them.  Such harm would be truly substantial and irreparable.[6]

Finally, as regards public interest, it is plain that there is a public interest in preventing KRG from using the U.S. judicial system to leverage delay into an opportunity to carry out the very conduct under review, particularly where this conduct could materially impact the success of settlement negotiations provided for in a law adopted by the Iraqi Parliament only days ago. This is just the sort of "manipulation" that "injures the legitimate interests of [the] other litigants," and as a result of which the proponent of a stay "surrenders any entitlement to obtain an appellate decision before trial."  *Apostol v. Gallion*, 870 F.2d 1335, 1338-39 (7th Cir. 1989) (5th Cir. 1991) (cited in Mot. at 12).[7]

---

[5]    *See* Bloomberg Art. at 3-4 ("Of the 25 tankers that have left Turkey loaded with Kurdish oil since May, 13 have gone dark—just as the Kalavryta did on Aug. 26."); Ex. B, Marinetraffic.com Record Printout (showing voyages of KRG-chartered tanker *Kamari*, showing that the *Kamari* made eight stops in Ceyhan in December 2014 and January 2015 with no reportable destination).

[6]    Neither of the out-of-circuit cases cited by KRG for the proposition that the harm to the non-movant must be "irreparable" state or imply that the harm must be more than "substantial."  *Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 n.3 (D.C. Cir. 1977).  In any event, the harm to MoO from having to monitor KRG's actions and pursue additional litigations over the issues sought to be resolved in this case would be irreparable as well as substantial.

[7]    In contrast, KRG does not create a meaningful public interest in its favor by arguing that a public interest exists in vindicating its own contested positions on the FSIA, political question doctrine, and act of state doctrine. Dkt. 59 at 15.

Allowing the issues before the Court to proceed to resolution, unhampered by a stay, will give the parties final resolution, which will in turn reduce the need for additional litigation on similar issues related to additional cargoes.  Resolving the legal issue may also facilitate the negotiations that will commence shortly pursuant to the 2015 Iraqi Federal Budget Law adopted on January 30, 2015.[8] The purpose of these negotiations is to resolve the reciprocal positions of the Federal Government and the Kurdistan Region relating to the years 2004-2014, including the issues before this Court.  Resolution of the legal issues would simplify the issues for the negotiating parties and affect the likelihood of a successful resolution.

In sum, KRG has not demonstrated its entitlement to the unconditional stay it has requested, because such a stay is patently inequitable.  The Court should require that KRG either accede to the aforementioned conditions or live without the stay that it has failed to earn.

## VIII.   CONCLUSION

Because KRG has failed to show any "exceptional" reason for an interlocutory appeal and failed to show that it is entitled to an unconditional stay pending appeal, MoO respectfully requests that the Court deny KRG's Motion.

---

[8]         *See* Ex. C1 and C2, General Budget Law of the Federal Republic of Iraq for the Fiscal Year 2015, Art. 11(First)(B) (adopted Jan. 30, 2015).  Under Article 11(First)(B), the reciprocal positions of the Federal Government and the Kurdistan Region relating to the years 2004-2014 are to be settled following the completion of an audit by the Iraqi Supreme Audit Board.

Dated February 10, 2015.                    Respectfully submitted,

**CLEARY GOTTLIEB STEEN &**          **VINSON & ELKINS LLP**
**HAMILTON LLP**

**Boaz S. Morag**                         PHILLIP B. DYE, JR.
Federal ID No. 18019                    Attorney-in-Charge
One Liberty Plaza                       Federal ID No. 7216
New York, New York 10006                State Bar No. 06311500
Telephone: (212) 225-2894               **James L. Loftis**
Facsimile: (212) 225-3999               Federal ID No. 29739
bmorag@cgsh.com                         State Bar No. 12491210
                                        **John J. Michael**
**Andrew A. Bernstein***                Federal ID No. 36495
* Admitted *Pro Hac*                    State Bar No. 24041480
12, rue de Tilsitt                      Telephone: 713-758-2048
75008 Paris, France                     Facsimile:  713-615-5766
Telephone: +33 1 40 74 68 00            1001 Fannin Street
Facsimile: +33 1 40 74 68 88            Suite 2500
abernstein@cgsh.com                     Houston, Texas 77002
                                        pdye@velaw.com; jmichael@velaw.com;
                                        jloftis@velaw.com

                                        **Liane Noble**
                                        Federal ID No. 2329197
                                        State Bar No. 24079059
                                        2801 Via Fortuna, Suite 100
                                        Austin, Texas 78746-7568
                                        Telephone:  512-542-8505
                                        Facsimile:  512-236-3234
                                        lnoble@velaw.com

                                        **ATTORNEYS FOR PLAINTIFF**
                                        **MINISTRY OF OIL OF THE**
                                        **REPUBLIC OF IRAQ**

19

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document (and attachments, if any) has been provided to all known counsel of record by electronic service and/or certified mail, return receipt requested on this 10th day of February, 2015.

Harold K. Watson
Dimitri P. Georgantas
Eugene W. Barr
CHAFFE MCCALL L.L.P.
801 Travis Street, Suite 1910
Houston, Texas 77002
watson@chaffe.com;
georgantas@chaffe.com;
barr@chaffe.com

Michael J. Gottlieb
William C. Jackson
Samuel C. Kaplan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
202-237-2727 Telephone
202-237-6131 Facsimile
MGottlieb@BSFLLP.com
WJackson@BSFLLP.com
SKaplan@BSFLLP.com

Christopher E. Duffy
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
212-446-2300 Telephone
212-446-2350 Facsimile
CDuffy@BSFLLP.com

**ATTORNEYS FOR MINISTRY
OF NATURAL RESOURCES OF THE
KURDISTAN REGIONAL GOVERNMENT**

**OF COUNSEL:**

Gary Born
WILMER CUTLER PICKERING HALE AND DORR LLP
49 Park Lane
London W1K 1PS
United Kingdom
44-20-7872-1020 Telephone
gary.born@wilmerhale.com

David W. Ogden
David W. Bowker
David Z. Gringer
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-663-6000 Telephone
202-663-6363 Facsimile
david.ogden@wilmerhale.com
david.bowker@wilmerhale.com
david.gringer@wilmerhale.com

Liane Noble

21