## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| MINISTRY OF OIL OF THE REPUBLIC OF IRAQ, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | C.A. No. 3:14-cv-249 |
| 1,032,212 BARRELS OF CRUDE OIL, THE KURDISTAN REGION OF IRAQ, AND JOHN DOE BUYER, | § § § § | |
| Defendants. | § § | |

## DEFENDANT THE KURDISTAN REGION OF IRAQ'S
## REPLY IN SUPPORT OF ITS MOTION FOR CERTIFICATION
## UNDER 28 U.S.C. § 1292(B) AND FOR A STAY PENDING APPEAL

Defendant the Kurdistan Region of Iraq ("KRG") files this Reply Brief in further support of its Motion for Certification Under 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, Dkt. No. 59 ("Motion"), and in response to Plaintiff Ministry of Oil of the Republic of Iraq's ("MoO") Memorandum of Law in Response to Defendant's Motion for Certification Under 28 U.S.C. § 1292(b) and for a Stay Pending Appeal, Dkt. No. 66 ("Response"). As discussed herein, the KRG respectfully requests that the Court grant the Motion because (1) all of the requirements under § 1292(b) are satisfied, (2) an interlocutory appeal will promote judicial economy and avoid piecemeal litigation with multiple appeals, and (3) the circumstances justify a stay pending appeal. Additionally, the KRG agrees with the MoO that granting a stay would not bar the MoO from seeking a writ of sequestration in the event that the KRG brings oil shipments into the United States.

The KRG's initial Motion demonstrates that all of the requirements of 28 U.S.C. § 1292(b) are satisfied, and that permitting certification of the controlling questions of law addressed in the Court's January 7, 2015 denial of the KRG's motion to dismiss, Dkt. No. 57 ("Order"), will serve the interests of judicial economy and avoid piecemeal litigation and multiple appeals. The Fifth Circuit will hear the KRG's FSIA appeal, which is appealable as of right. Consequently, certification will allow the Fifth Circuit to consider, simultaneously rather than seriatim, several closely-related controlling legal questions where there is substantial ground for difference of opinion – any one of which would terminate the litigation if the KRG prevails. Interlocutory appeal of these issues will therefore materially advance the termination of this litigation.

There is no sound reason to deny certification. The main thrust of the MoO's Response appears to be that the interests of judicial economy are insufficient to exempt the KRG from the requirements of § 1292(b). But the KRG has claimed no such exemption. To the contrary, the KRG has shown that the requirements of § 1292(b) are satisfied, and that permitting an interlocutory appeal of these issues alongside the FSIA appeal "will best serve the interest of judicial economy and the goal of avoiding piecemeal litigation and multiple appeals." Motion at 6. The KRG's Motion should therefore be granted.

As an initial matter, the MoO relies substantially on its incorrect assertion that the "only other court that has faced identical procedural circumstances has denied interlocutory certification." Resp. at 4 (citing *Eckert Int'l, Inc. v. Gov't of Sovereign Democratic Republic of Fiji*, 834 F. Supp. 167 (E.D. Va. 1993), *aff'd*, 32 F.3d 77 (4th Cir. 1994)). But *Eckert* is inapposite because, as the MoO itself recognizes, the political question and act of state arguments for which Fiji sought interlocutory review in that case were "wholly insubstantial and

lacking in any direct or analogous case support," something that is certainly not the case here. 834 F. Supp. at 174. Moreover, a judge of this Court, facing circumstances similar to this case, *did* certify an interlocutory appeal, and granted a stay pending its outcome. *See Arriba, Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 528 n.1 (5th Cir. 1992) ("Pemex moved to certify both the sovereign immunity and Act of State questions for interlocutory appeal. 28 U.S.C. § 1292(b). The court granted Pemex's motion as well as its request for a stay pending appeal."), *rev'g* No. 4:89-cv-02442 (S.D. Tex. January 28, 1991); *see also*, *e.g.*, *Altmann v. Republic of Austria*, 142 F. Supp. 2d 1187, 1215 (C.D. Cal. 2001) ("The portion of this Order holding that the Court has subject matter jurisdiction because Austria is not entitled to sovereign immunity is immediately appealable pursuant to the collateral order doctrine. For this reason, the Court hereby certifies the remaining portions of this Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).") (citation omitted). For reasons described in the KRG's initial Motion and herein, the outcome should be the same here.

## I.      THE KRG'S MOTION SATISIFIES THE § 1292(B) REQUIREMENTS

### A.      There Are Substantial Grounds For Difference Of Opinion Because This <u>Case Presents Novel And Difficult Questions Of First Impression.</u>

#### 1.      The Political Question Doctrine

There is a substantial ground for difference of opinion regarding the Court's political question doctrine holding. No U.S. court has ever adjudicated the merits of a dispute involving a foreign constitutional claim brought by one sovereign entity of a foreign state (here, a Ministry) against another sovereign entity within the same foreign state (here, a Regional Government). Indeed, throughout the course of this litigation, the MoO has not cited a case – and we know of no case – that is even roughly analogous. The MoO does not dispute that a substantial ground for certification exists if, *inter alia*, "'complicated questions arise under foreign law'" or "'if novel

and difficult questions of first impression are presented.'" *See* Resp. at 5 (quoting *Abecassis v. Wyatt*, No. 09-cv-3884, 2014 WL 5483724, at *3 (S.D. Tex. Oct. 29, 2014) (Miller, J.)). Both conditions are present here.

First, the Court's refusal to dismiss under the political question doctrine indisputably involves "complicated questions aris[ing] under foreign law." The second prong of the political question doctrine – the existence of judicially manageable standards – requires this Court to conclude that the Iraqi Constitution provides judicially manageable standards to resolve this dispute.[1] Thus, contrary to the MoO's assertion (Resp. at 5, 9), U.S. law is necessarily insufficient to resolve this question.

Second, the Court's political question decision certainly presents "novel and difficult questions of first impression." Whether a U.S. court may adjudicate the merits of a dispute such as this one, and in particular where the U.S. Government has maintained a position of neutrality between the parties, is plainly one of first impression, and the MoO cannot cite any case that suggests otherwise. What is more, the underlying questions of Iraqi law themselves present difficult questions of first impression.

Fifth Circuit precedent further demonstrates the substantial ground for difference of opinion on this issue. While the MoO has cited no analogous cases, the KRG has cited two Fifth Circuit cases holding that disputes over sovereign control of Middle East oil resources are non-justiciable political questions, including one that directly involved contending claims of sovereignty over rights to oil that the Court held to be "constitutionally reserved to the Executive

---

[1] Indeed, the Court's opinion exclusively cites foreign law as the basis for its conclusion that this standard is not met. Order at 11 (asserting that to "resolve the dispute, the Court can review the text of the Iraqi Constitution, the Waset Governorate decision and a 2013 law"). The KRG's prior filings explain in detail why these sources do not provide judicially manageable standards for resolving this dispute. At minimum, the KRG respectfully submits that the substance of those filings demonstrate that the issue is novel and that there is a substantial ground for difference of opinion.

branch" "in the absence of executive action" as to which nation had sovereignty. *Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard the Tanker Dauntless Colocotronis*, 577 F.2d 1196, 1203-04 (5th Cir. 1978); *see Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 952 (5th Cir. 2011) ("[W]e are persuaded that the foreign policy issues at stake in this case are textually committed to the political branches."). This Court distinguished *Occidental* and *Spectrum*, but there is a substantial ground for the Fifth Circuit to have a difference of opinion about whether those cases should apply here, particularly in the absence of any case, in any Circuit, holding that a dispute with similar facts is justiciable in U.S. courts.

Sidestepping the KRG's actual arguments, the MoO attempts to reduce them to whether a court may ever interpret a foreign constitution. *See* Resp. at 6-7 (arguing that such interpretation "is a commonplace function for the Judiciary"). But that is not the issue. The cases cited by the MoO did not involve a dispute between two sovereign entities within the same foreign state regarding the political and constitutional allocation of authority over that foreign state's natural resources; moreover, those cases involved constitutions that, unlike the Iraqi provisions at issue here, had firmly established standards to guide U.S. courts in addressing the disputes.

The MoO also argues that the Court's decision was "plainly correct," asserting that the "dispositive factor here is that 'resolving this dispute consistently with the text of the Iraqi Constitution does not contradict, and appears to support, the daily press briefings by the U.S. State Department.'" Resp. at 8 (quoting Order at 9). But the agreement of all sides (including both parties in this case) that this dispute over sovereign control of natural resources in Iraq should be resolved – to the extent possible – according to the Iraqi Constitution, and otherwise within an ongoing political process in Iraq, in no way suggests that a United States court has

jurisdiction to resolve this dispute, especially in light of the U.S. State Department's diplomatic decision not to take sides. Because there is at the very least a substantial ground for difference of opinion as to the appropriateness of U.S. jurisdiction over this unusual dispute between Iraqi sovereigns, § 1292(b) certification is appropriate.[2]

### 2.     The Act Of State Doctrine

The Court's decision on the act of state defense likewise presents a novel and difficult issue of law. The Court ruled that the act of state doctrine does not apply based on its finding that while the KRG is a "foreign state" for purposes of the FSIA, its status as a political subdivision bars it from asserting the act of state doctrine. No prior case establishes that rule. As another court remarked, "Plaintiffs cite no federal case law, and the Court is aware of none, that supports the argument that a political subdivision of a sovereign nation is incapable of performing an 'act of state.'" *Malewicz v. City of Amsterdam*, 517 F. Supp. 2d 322, 337 n.2 (D.D.C. 2007). There is, in fact, substantial case law holding the opposite. *Shapleigh v. Mier*, 83 F.2d 673, 676 (5th Cir. 1936) (applying the act of state doctrine to "an act of expropriation done by the Governor of Chihuahua"), *aff'd*, 299 U.S. 468 (1937); *Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena*, 293 F. Supp. 892, 910 (S.D.N.Y. 1968) ("Whether or not Wuerttemberg . . . is considered a member state, or land, of some other entity . . ., it has possessed sufficient attributes of an independent sovereign to qualify as a 'state' within the meaning of the 'act of state' doctrine."), *aff'd as*

---

[2] The MoO also asserts that "no political question exists when the political branch at issue has demonstrated its opinion that the case presents a justiciable question." Resp. at 8. No political branch has made such a statement, and the Court did not find otherwise. The statement cited by the MoO is not a pronouncement that the dispute is justiciable. If anything, it supports the KRG's position ("This isn't a legal issue. It's a policy issue.") and otherwise cautions that there is legal uncertainty. *See* Dkt. No. 54-1 at 2 ("As in many cases involving legal disputes, however, the U.S. recommends that the parties make their own decisions with advice of counsel. We've told them there could be legal consequences."). Similarly, no conclusion can be drawn from the fact that the United States submitted no statement of interest. Indeed, in *Occidental* and *Spectrum*, the State Department submitted filings asserting that the dispute was non-justiciable only at the *appellate* level, and then only at the specific request of the Fifth Circuit. *Spectrum Stores*, 632 F.3d at 951 n.14; *see Occidental*, 577 F.2d at 1204 n.13.

*modified*, 433 F.2d 686 (2d Cir. 1970); *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.*, 331

F. Supp. 92, 113 (C.D. Cal. 1971) (applying the act of state doctrine to the acts of two sheikdoms

and rejecting plaintiffs' argument "that Sharjah and Umm al Qaywayn do not qualify as 'states'

under the act of state doctrine, because they have delegated to Britain ultimate authority over

their foreign relations"), *aff'd*, 461 F.2d 1261 (9th Cir. 1972).

Indeed, the KRG has for years conducted its own foreign policy and diplomacy,

independent of Iraq, including in its foreign relations with the United States. Dkt. No. 52-1 at 3

n.10. Further, Kurdistan is the only "Region" expressly recognized in the Iraqi Constitution, and

the KRG's motion to dismiss explained that under Iraq's Constitution and decentralized

government, the Iraqi federal government does not maintain exclusive control over the country's

oil resources. *See* Dkt. No. 44-1 at 28-34. In fact, the MoO's own allegations demonstrate that

Turkey recognizes the KRG's sovereign right to export oil from "future" fields within Kurdistan

"by following the KRG's instructions and not the MoO's instructions and by loading the Cargo

onto the UNITED KALAVRVTA in the navigable waters off of Ceyhan, Turkey." Dkt. No. 39

¶ 19. These points further illustrate that there is a substantial ground for difference of opinion as

to whether the KRG possesses "sufficient attributes of an independent sovereign to qualify as a

'state' within the meaning of the 'act of state' doctrine." *Carl Zeiss Stiftung*, 293 F. Supp. at 910.

At the very least, this issue raises complicated and novel questions of foreign law, questions that

are recognized by experts, including those cited by the MoO. *See, e.g.*, Dkt. No. 44-7, Sean

Kane, *Iraq's Oil Politics: Where Agreement Might Be Found*, at 7 (2010) (stating that the Kurds

have "largely obtained in the constitution a legal structure for the Iraqi state where regional law

trumps national law on most issues, including most significantly in oil matters.").[3] There are accordingly substantial grounds for difference of opinion as to whether the KRG has engaged in sovereign acts that warrant application of the act of state doctrine under the unusual circumstances here.

### 3. Whether The MoO Has Stated A Valid Claim For Relief

Whether the MoO has stated a valid claim for relief under the Iraqi Constitution also presents a "complicated question under foreign law" and a "novel and difficult question of first impression." The MoO argues that the only relevant question is whether it has stated a plausible claim under Iraqi law. Even if that were true, that question would still satisfy the legal standard for certification because the question of whether Iraq's claims are plausible undeniably raises "complicated questions of foreign law" and presents a "novel and difficult question of first impression."[4]

Further, the MoO's erroneous assertion that the KRG has conceded plausibility (Resp. at 10) selectively omits the KRG's statement that the "KRG believes that the briefing on this issue unequivocally demonstrates that the MoO's position is untenable." Motion at 10. Finally, by relying on the Waset Governorate decision the MoO continues to ignore that (i) the Waset Governorate decision does not address the political and constitutional question at the core of the

---

[3] The Court also held that even if the KRG is a state for act of state purposes, the policies of the act of state doctrine dictate against its application in large part because the Ministry sought relief in this country's courts. As the Court recognized, however, the cases it cited for that proposition are "factually distinguishable" because the sovereign in those cases invoked the courts and then sought to insulate its own conduct from review. Here, the KRG (the "state" in question) did not invoke U.S. courts. Forcing a state to submit to a lawsuit in a foreign jurisdiction at the demand of a ministry within the same country is entirely unprecedented, and how the act of state doctrine should apply to such an internal federalism dispute presents a novel and difficult issue of law.

[4] The MoO also misstates the plausibility standard, which tests whether the inferences drawn from factual allegations are sufficiently plausible to establish a claim under the governing law. It is not designed to lower the threshold for establishing what the governing law is. Instead, for evaluating questions of pure law (such as the meaning of the Iraqi Constitution under Fed. R. Civ. P. 44.1) in a 12(b)(6) motion, the question is whether the MoO's interpretation is correct, not whether it is merely "plausible."

merits dispute here – the issue of control over oil from *future*, rather than present, fields and (ii) the law required for establishing the Iraqi Federal Supreme Court under the Constitution has indisputably never been passed.

### B.      An Immediate Appeal Will Materially Advance The Litigation.

The MoO does not dispute that the issues identified as the basis for § 1292(b) certification are controlling issues of law, and it concedes the obvious point that reversal would necessitate dismissal of the action. Accordingly, "[a]n authoritative decision [on either issue raised by the KRG] would not only 'materially advance' the ultimate disposition of 'the litigation,' it would terminate it altogether." *Ex parte Tokio Marine & Fire Ins. Co.*, 322 F.2d 113, 115 (5th Cir. 1963).

The MoO advances no argument for how it could prevail on this element of the test if (as is the case here) the other elements are satisfied. Indeed, courts have recognized that the existence of a controlling question of law is closely aligned with whether certification would materially advance the termination of the litigation. *See Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 701 (5th Cir. 1961) ("[I]f appellants-respondents are correct on the lack of admiralty jurisdiction, the whole case ends once and for all. Neither the Court nor the parties should be put to the expense in time for a trial of such a possible congenital deficiency."); *Harch Hyperbarics, Inc. v. Martinucci*, No. 09-cv-7467, 2010 WL 4665923, at *5 (E.D. La. Nov. 9, 2010) (holding that if "reversal of the district court's opinion [on any one of the legal issues subject to certification] could result in dismissal of the action," as in this case, certification for interlocutory appeal is particularly appropriate) (citation omitted).[5] Instead, the MoO simply posits that the

---

[5] *See also Pillsbury Co. v. The Port of Corpus Christi Auth.*, 66 F.3d 103, 104 (5th Cir. 1995) (interlocutory review of applicability of 11th Amendment immunity defense); *Lewis v. Intermedics Intraocular, Inc.*, 56 F.3d 703, 706 (5th Cir. 1995) (interlocutory review of federal preemption defense); *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718,

KRG might not win on appeal. But again, that is not the relevant legal question. If it were, no case would be appropriate for certification, as there will always be some degree of uncertainty regarding the outcome on appeal. The final element requires only a showing that an appeal "*may materially advance the ultimate termination of the litigation*," not that the appellant is certain to prevail. Accordingly, the KRG has satisfied the requirements of § 1292(b), and the Court should therefore certify the appeal.

## II. THE CIRCUMSTANCES JUSTIFY A STAY PENDING APPEAL

The MoO's Response does not dispute that a sovereign's appeal of the denial of sovereign immunity warrants a stay, in part because an appeal under the collateral order doctrine "ordinarily divests the district court of jurisdiction to proceed with the litigation pending its resolution." *Ungar v. Palestine Liberation Organization*, 402 F.3d 274, 293 (1st Cir. 2005) (citing cases); *see Eckert*, 834 F. Supp. at 175. Instead, the MoO states that a stay would be inequitable unless two conditions are met. Its first condition – that any stay "must not impede MoO's right to seek a writ of sequestration from this Court if KRG attempts to discharge the Cargo," Resp. at 13 – is unobjectionable. In particular, the KRG agrees, as it previously informed MoO counsel, that a stay in this litigation would not preclude the MoO from seeking a writ of sequestration under such circumstances. Obviously, the KRG would be entitled to oppose such a petition, but a stay would not prevent the MoO from pursuing it. Thus, the MoO would not be prejudiced by a stay.

---

723 (N.D. Tex. 2006) ("[C]ourts have found issues to be controlling if reversal of the district court's opinion would result in dismissal of the action.") (internal citations omitted). In this case, controlling issues of law are dispositive of the outcome, and the "controlling question of law" and "material advancement" requirements are simultaneously met. *Ryan*, 444 F. Supp. 2d at 723 ("[A] *controlling* question of law – although not consistently defined – at the very least means a question of law the resolution of which could materially advance the ultimate termination of the litigation—thereby saving time and expense for the court and the litigants.").

There is no justification, however, for the MoO's second proposed condition – that a stay be conditioned on notice of future shipments of oil into the United States. Any future shipments are not at issue in this lawsuit; they are not named in the MoO's complaint, nor are they otherwise before the Court. It is therefore difficult to understand how a stay in *this matter* could prejudice the MoO from seeking judicial relief regarding such shipments. Furthermore, imposing such a requirement would essentially grant the MoO a form of preliminary injunctive relief, which it has not properly requested under Fed. R. Civ. P. 65, and which this Court has no legal basis to grant.

A stay pending the KRG's appeal should therefore be granted for the reasons previously stated in the KRG's Motion, and in light of the KRG's agreement that a stay will not prejudice the MoO's right to seek injunctive relief from this Court in the event that the KRG attempts to discharge the Cargo.

## CONCLUSION

For the foregoing reasons, the KRG respectfully requests that the Court (1) amend the Order to state that it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b); (2) certify the Order for immediate appeal to the Fifth Circuit; and (3) stay this case pending the outcome of the interlocutory appeal.

Respectfully submitted,

/s/ Harold K. Watson
Harold K. Watson
Texas Bar No. 20938500
Federal I.D. No. 4345
Attorney-in-Charge
Dimitri P. Georgantas
Texas Bar No. 07805100
Federal I.D. No. 2805
Eugene W. Barr
Texas Bar No. 24059425
Federal I.D. No. 1144784
CHAFFE MCCALL, L.L.P.
801 Travis Street, Suite 1910
Houston, Texas 77002
713-546-9800 Telephone
713-546-9806 Facsimile

Michael J. Gottlieb
William C. Jackson
Samuel C. Kaplan
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015
202-237-2727 Telephone
202-237-6131 Facsimile
MGottlieb@bsfllp.com
WJackson@bsfllp.com
SKaplan@bsfllp.com

Christopher E. Duffy
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
212-446-2300 Telephone
212-446-2350 Facsimile
CDuffy@bsfllp.com

ATTORNEYS FOR DEFENDANT,
THE KURDISTAN REGION OF IRAQ

2418940-1

OF COUNSEL:

Gary Born
WILMER CUTLER PICKERING HALE AND DORR LLP
49 Park Lane
London W1K 1PS
United Kingdom
44-20-7872-1020 Telephone
gary.born@wilmerhale.com

David W. Ogden
David W. Bowker
David Z. Gringer
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
202-663-6000 Telephone
202-663-6363 Facsimile
david.ogden@wilmerhale.com
david.bowker@wilmerhale.com
david.gringer@wilmerhale.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of February, 2015, I served a true and correct copy of the foregoing Defendant the Kurdistan Region of Iraq's Reply in Support of its Motion for Certification Under 28 U.S.C. § 1292(b) and For a Stay Pending Appeal pursuant to Rule 5 of the Federal Rules of Civil Procedure, via the CM/ECF Filing System and/or by depositing the same in the United States Mail, postage prepaid and properly addressed to all known counsel of record:

Phillip B. Dye, Jr.
John J. Michael
Vinson & Elkins LLP
1001 Fannin Street, Suite 2500
Houston, Texas 77002
pdye@velaw.com
jmichael@velaw.com

Liane Noble
Vinson & Elkins LLP
2801 Via Furtuna, Suite 100
Austin, Texas 78746-7568
lnoble@velaw.com

Boaz S. Morag
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
bmorag@cgsh.com

*/s/ Harold K. Watson*
Harold K. Watson
